### State of Vermont v. Robert E. Loehmann

[467 A.2d 118]

No. 82-213

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ**

Opinion Filed September 6, 1983

373

*Terry J. Trono,* Washington County State's Attorney, Barre, for Plaintiff-Appellee.

*Robert M. Paolini* and *Carlyle Shepperson* of *Martin & Paolini, P.C.,* Barre, for Defendant-Appellant.

Billings, C.J. After pleading nolo contendere to the charge of driving while intoxicated, 23 V.S.A. § 1201 (a) (2), defendant was sentenced in June of 1982 by the Washington District Court to "a maximum of one year with 45 days to serve, 30 if it is served straight time; fine of $140." Defendant appeals, claiming first that his constitutional right to fair treatment with regard to plea bargaining was violated, and second, that he was denied effective assistance of counsel.

The facts surrounding the incident are not in dispute. On the afternoon of February 13, 1982, defendant was driving along Route 100 in Moretown, Vermont, when he pulled out to pass a line of cars in front of him and collided "nearly head-on" with another car, causing severe injuries to himself and the passengers in the other car. Defendant was taken to the hospital where, some two hours later, he was given a blood test indicating his blood alcohol content to be .14 percent. Defendant later testified that he remembered nothing about the incident.

At the arraignment on March 8, 1982, defendant, represented for the purposes of the hearing by a public defender, pleaded not guilty to the DUI charge. The court then asked if he planned to hire an attorney, to which he replied, "Yes, I do." The public defender then asked the court if it had received defendant's application for assigned counsel. The following colloquy then occurred:

> THE COURT: Oh yes. Yes. I did. Well, I'm going to deny it unless the State's looking for jail time, here.
>
> [STATE'S ATTORNEY]: No.
>
> [PUBLIC DEFENDER]: I thought there might be a probation situation, although I wasn't sure. But, there was— I knew there was some injury to other people here.
>
> THE COURT: There's a possibility of restitution—
>
> [STATE'S ATTORNEY]: Yes.
>
> THE COURT: —being required?
>
> [STATE'S ATTORNEY]: There is that possibility, Judge.
>
> THE COURT: Mm-hm. I don't think he qualifies financially in any event. All right. I'm going to indicate that he does not meet the guidelines, does not appear to be substantially in debt, from what I'm able to determine . . . .

On May 3, 1982, there was a hearing at which defendant, represented by hired counsel, changed his plea to nolo contendere. The following excerpts of that hearing are relevant:

> THE COURT: Is there any plea agreement?
>
> [DEFENDANT'S ATTORNEY]: No, your Honor. We will be entering a plea of nolo contendere. . . .
>
> THE COURT: Okay. And, I want to make sure that he understands that I am not ruling out imprisonment.
>
> [DEFENDANT'S ATTORNEY]: We understand that, your Honor.

The court went on to explain to defendant the rights he was waiving by his plea, and then asked:

> THE COURT: Has anybody promised you anything—
>
> [DEFENDANT]: No.
>
> THE COURT: —with regard to this to get you to plead . . . nolo contendere?

[DEFENDANT] : No.

THE COURT: Has anyone put any pressure on you to get you to do this?

[DEFENDANT] : No.

THE COURT: Do you realize that you could receive a penalty of up to a year in prison and a fine of $500, or both, in connection with this?

[Defendant] : Yes. Yes, your Honor.

. . . .

THE COURT: All right. And, I take it there's no plea agreement?

. . . .

[STATE'S ATTORNEY] : I did tell [defendant's attorney] that with the information I have here, I would not recommend probation. I've spoken to—

THE COURT: You will, or will not?

[STATE'S ATTORNEY] : Would not.

THE COURT: All right.

[STATE'S ATTORNEY] : It's a .14 test, Judge. It's a serious head-on collision caused, we believe, by [defendant]. It's a first offense. And, I would recommend time to serve up to your discretion. . . .

THE COURT: All right. . . . At least he's—At least [defendant's] aware that the State's going to be recommending imprisonment.

[DEFENDANT'S ATTORNEY] : Yes, your Honor.

Defendant now claims that although there was no formal plea agreement, nevertheless he was induced to change his plea to nolo contendere in part because he recalled and relied upon the state's attorney's negative response, at the March 8 arraignment, to the question whether he would be "looking for jail time, here." Notwithstanding the fact that the March 8 colloquy quoted above only concerned defendant's eligibility for assigned counsel, defendant argues that the state's attorney's response in open court amounts to a binding "promise" in the nature of a plea agreement. As such, he urges, the rule of *Santobello* v. *New York*, 404 U.S. 257 (1971), and its progeny, as well as the due process clause of the fourteenth amend-

ment, require us to remand the cause to district court for a new sentencing hearing and to order the State specifically to perform its bargain and recommend no jail time.

However, defendant faces a threshold barrier to this argument: on the facts before us we simply find no evidence of a plea agreement. Nor can it fairly be said that the state's attorney, in a discussion concerning assignment of counsel, obligated the State or misled defendant in an agreement akin to a plea bargain.

 Black's Law Dictionary defines plea bargaining as "[t]he process whereby the accused and the prosecutor in a criminal case work out a mutually satisfactory disposition of the case subject to court approval." Black's Law Dictionary, 1037 (rev. 5th ed. 1979). Moreover, those cases cited by defendant all discuss plea bargaining in these terms. The U.S. Supreme Court in *Santobello* v. *New York, supra,* recognized that plea bargaining is "an essential component of the administration of justice," *id.* at 260, and one which must be "attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 262. However, the Court also defined it as the "disposition of criminal charges by agreement between the prosecutor and the accused . . . after plea discussions." *Id.* at 260–61. In *Cooper* v. *United States,* 594 F.2d 12 (4th Cir. 1979), cited by defendant as well, the court states: "[N]o right [to enforce plea agreements] can arise in a defendant until plea discussions are voluntarily entered into by authorized government agents; there is no constitutional right in defendants to have the government 'bargain' in the first instance." *Id.* at 19–20 (citing *Weatherford* v. *Bursey,* 429 U.S. 545 (1977)).

██ Here it is beyond dispute that there were no plea discussions or negotiations between defendant and the prosecutor. This was acknowledged by both during the May 3 plea change hearing. Nor does the prosecutor's response during arraignment rise to the level of a "promise," given the limited context in which it was made. The prosecutor was merely responding to a question on the preliminary matter of assignment of counsel. Simply put, there was just no plea agreement entered into here. Moreover, at the time of his plea change,

defendant clearly indicated to the court that he was aware that the State might recommend and the court might impose incarceration. As he was represented by counsel at this hearing, and was fully apprised of his rights, any claims which defendant might have had that a plea agreement existed were waived at that time.

Even if we were to construe the state's attorney's negative response to a question from the bench as a promise which could "be said to be part of the inducement or consideration" in attaining defendant's nolo plea, *Santobello* v. *New York, supra,* 404 U.S. at 262, defendant cannot be said to have been prejudiced thereby. At the sentencing hearing on June 1, 1982, defendant informed the court that he would be appealing his conviction on the basis of the state's attorney's failure to follow through on his March 8 "promise" to recommend no jail time. At that time, the state's attorney pointed out that defendant was denied assigned counsel based upon his financial ineligibility, and not because there would be no jail time imposed. He went on to stress that at the time of arraignment the state's attorney had not yet received the accident report detailing the extent and seriousness of the injuries resulting. When he did receive that report prior to the May plea change hearing, he notified defendant's attorney of its contents, and apprised him of the fact that he would be recommending jail time. Moreover, at the sentencing hearing the court offered defendant, with the State's agreement, the opportunity to withdraw his plea and proceed to trial before a new judge. Given that choice, defendant himself decided to proceed to sentencing.

However, defendant argues that the choice to withdraw his plea was inadequate, and that he should have been given the further choice of holding the State to its "promise" by "specific enforcement." In support of this contention defendant again cites *Santobello* and its progeny. In *Santobello,* a split court remanded the case to the state court to determine, in its discretion, whether to order specific performance of the plea bargain or to allow defendant to change his plea. In so doing, the Court clearly stated that the choice between the two options was a discretionary one delegated to the state courts. It is true that in cases since *Santobello* specific performance

has often been the chosen remedy in light of the particular circumstances of each case. See *Cooper* v. *United States, supra,* 594 F.2d at 20–21; *Palermo* v. *Warden,* 545 F.2d 286, 296–97 (2d Cir. 1976) ; *Harris* v. *Superintendent,* 518 F.2d 1173, 1174 (4th Cir. 1975) ; *Correale* v. *United States,* 479 F.2d 944, 950 (1st Cir. 1973). However, in each of these cases the court found a valid plea agreement, entered into after negotiation by the parties. As no such agreement exists here, the cases offer defendant no support. Having knowingly pled nolo contendere, and having failed to withdraw that plea prior to sentencing, defendant is thereby bound.

██ Nor is there merit in defendant's second claim of ineffective assistance of counsel. As stated in *State* v. *Campanelli,* 142 Vt. 362, 366, 454 A.2d 1248, 1251 (1982) (quoting *State* v. *Durling,* 140 Vt. 491, 497, 442 A.2d 455, 458 (1981)) :

> Ineffective assistance of counsel claims must be brought through collateral attack under post-conviction proceedings, rather than on direct appeal. This procedure is designed to afford a review based on a "full evaluation of all relevant issues, rather than on the inadequate inferences of a trial transcript."

Thus we are precluded from review here.

*Judgment affirmed.*