# State of Vermont v. Reginald Duval

[589 A.2d 321]

No. 88-006

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed February 15, 1991

*William Sorrell,* Chittenden County State's Attorney, Burlington, and *Gary S. Kessler* and *Rosemary Hull,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *William A. Nelson* and *Henry Hinton,* Appellate Defenders, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant claims, in this appeal from a sentence for driving under the influence (DUI), that his rights to assistance of counsel and freedom from double jeopardy were violated when the sentencing judge failed to honor a prior determination that defendant would not be incarcerated. We affirm.

On October 5, 1987, defendant appeared for arraignment on a charge of DUI before Judge Wolchik, who denied defendant's request for assistance of counsel at public expense. A court form entitled "Request for Assignment of Lawyer & Order" had been filled out by defendant, and the judge checked the parts of the order indicating:

> The Court finds as fact your income and expenses, dependents and property as set forth above, and has determined that you do not qualify for the appointment of a Public Defender or assigned counsel for the following reasons:
>
> . . . .
>
> .c. *x* Although you may be a needy person, you are not entitled to a lawyer. This Court has determined at arraignment, and stated on the record, that if you are convicted it will not sentence you to a period of imprisonment or fine you more than $1,000.00.

See 13 V.S.A. §§ 5231, 5201(4)(B); V.R.Cr.P. 44(a). At this time, defendant pled not guilty and was released on his own recognizance.

Defendant returned to court on November 6, 1987, and indicated he wanted to change his plea. The presiding judge, Judge Pineles, permitted defendant to appear pro se and, after taking appropriate steps to ensure the plea was voluntary, accepted the plea of guilty.

Prior to sentencing, Judge Pineles questioned defendant about his prior criminal history. Only then did the court learn that defendant was on probation for two recent related driving offenses involving alcohol. Still believing that defendant voluntarily appeared pro se, the judge ordered a presentence investigation. After this hearing, when it became apparent that a sentence involving incarceration might be appropriate, Judge Pineles sent notice to a public defender assigning him to represent defendant.

At a status conference, Judge Pineles refused to honor the "no incarceration" pledge given by Judge Wolchik and instead offered defendant the opportunity to withdraw his plea of guilty. On the advice of appointed counsel, defendant rejected the judge's offer and proceeded to sentencing, maintaining that Judge Pineles could not impose incarceration. Defendant was thereafter sentenced to three to six months, all suspended except for nine days and probation with conditions. Defendant appeals this sentence.

I.

■ Indigent criminal defendants have a constitutional right to assistance of counsel at public expense. *Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963). However, this right is limited to offenses for which the defendant receives a sentence of imprisonment upon conviction. *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). In our public defender statute, Vermont has statutorily codified this right, 13 V.S.A. § 5231, and expanded it to include convictions which carry a fine in excess of $1,000. 13 V.S.A. § 5201(4)(B). The statute, however, provides an exception if "the judge, at the arraignment but before the entry of a plea, determines and states on the record that he [or she] will not sentence the defendant to a fine of more than $1,000.00 or a period of imprisonment if the defendant is convicted of the misdemeanor." *Id.*

The statute requires the court to make a sentencing forecast before the entry of a plea made without counsel. This requirement protects defendants from having to proceed, without benefit of counsel, through plea negotiations that might result in imprisonment. See Vermont Code of Professional Respon-

sibility DR 7-104(A)(1) (prohibiting communications with parties known to be represented by counsel).

■ Defendant claims that this requirement also prevents the court from changing its mind after it makes its initial § 5201(4)(B) determination. He maintains that, once the plea is accepted in a case where assistance of counsel was denied, the court may not reverse its prior denial of counsel. Rather, the court is bound just as if it had accepted a plea agreement reached by the parties that defendant not be incarcerated. Cf. *In re Meunier*, 145 Vt. 414, 420, 491 A.2d 1019, 1024 (1985) (prosecution held to most meticulous standards of both promise and performance and will be bound by express terms of its agreement). Generally, breach of a plea agreement is treated like breach of a contract, and a defendant may demand specific performance of the terms of the agreement. *Id.* at 422, 491 A.2d at 1025.

Defendant argues that a 13 V.S.A. § 5201(4)(B) ruling should be treated as a binding plea agreement: "The undertaking by a judge . . . not to impose a sentence of imprisonment, is analogous to the undertaking by a prosecutor, pursuant to a plea agreement, to recommend a particular sentence." The flaw in defendant's argument is that no sentencing contract was created here. The arraignment judge did not unconditionally promise that defendant would not be incarcerated under any circumstances. Rather, the judge made a conditional promise that defendant would not be incarcerated without benefit of assigned counsel. Defendant was entitled to rely only on that limited promise.

We considered a similar issue in *State v. Loehmann*, 143 Vt. 372, 467 A.2d 118 (1983). In *Loehmann*, at defendant's arraignment on a DUI charge, the state's attorney denied any intention of requesting imprisonment. *Id.* at 374, 467 A.2d at 119. The judge then denied defendant assigned counsel because he was not poor enough to qualify. *Id.* On appeal, defendant argued that he had changed his plea in reliance on the state's attorney's "promise" and was entitled to specific performance. *Id.* at 375, 467 A.2d at 119. The Court rejected defendant's argument:

> [T]he prosecutor's response during arraignment [did not] rise to the level of a "promise," given the limited context in

which it was made. The prosecutor was merely responding to a question on the preliminary matter of assignment of counsel.

*Id.* at 376, 467 A.2d at 120.

 Similarly, Judge Wolchik's statements here did not rise to the level of a plea agreement. The pledge not to incarcerate was made in the "limited context" of "the preliminary matter of assignment of counsel" and did not operate as consideration to induce defendant into entering a plea of guilty. Indeed, defendant initially pled not guilty and only later changed his plea to guilty. He was then offered the opportunity to withdraw his guilty plea and start over with the assistance of counsel. Based on the advice of counsel, defendant chose as a matter of strategy to stand on his guilty plea in order to preserve his objection for this appeal. The offer to withdraw the guilty plea restored to defendant his Sixth Amendment rights as if he had not previously entered a plea.

Finally, even if defendant relied on the court's "promise" in making damaging admissions about his driving record, this reliance caused him no prejudice. Defendant's prior convictions were a matter of record, and it only could have been to his benefit to own up to information that inevitably would be brought to the court's attention.

## II.

 The remaining issue is whether double jeopardy prevents a judge from imposing a harsher sentence on defendant than that originally intended after acceptance of his plea. Defendant first argues that, because he was compelled to proceed without counsel and enter a plea of guilty in the hopes of not being incarcerated, he cannot now be compelled to waive his double jeopardy right against harsher punishment.

In *State v. Boyer*, 144 Vt. 393, 481 A.2d 15 (1984), we reviewed a double jeopardy claim challenging the validity of an increased sentence imposed under 13 V.S.A. § 7042(b). Defendant pled nolo contendere to two driving-related offenses and was sentenced. After defendant began serving his sentence, the State moved for sentence review on the ground that, at the time of sentencing, both the State and the court were unaware that

defendant had previously been convicted for DUI in which a fatality had occurred. The court granted the motion and imposed a harsher sentence. *Id.* at 394, 481 A.2d at 15–16. We rejected defendant's double jeopardy claim, relying on United States Supreme Court precedent for the proposition that "'the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase.'" *Id.* at 395, 481 A.2d at 16 (quoting *United States v. DiFrancesco,* 449 U.S. 117, 137 (1980)). See also *State v. Rice,* 145 Vt. 25, 29–30, 483 A.2d 248, 250–51 (1984) (reaffirming *Boyer* and stating that double jeopardy does not give defendant the "right to know at any specific moment in time what the exact limit of his punishment would turn out to be"). Similarly, defendant was not put in double jeopardy here.

Defendant goes on to argue that, because the court accepted a guilty plea, the defendant was convicted of a crime, jeopardy attached, and he could not be convicted a second time.

First, the rule is only that jeopardy "generally" attaches at the time of acceptance of the guilty plea, *State v. Forbes,* 147 Vt. 612, 616, 523 A.2d 1232, 1234–35 (1987); the rule has exceptions. The attachment of jeopardy upon the court's acceptance of a guilty plea is neither automatic nor irrevocable. *United States v. Santiago Soto,* 825 F.2d 616, 618 (1st Cir. 1987). "The mere acceptance of a guilty plea does not carry the same expectation of finality and tranquility that comes with a jury's verdict or with an entry of judgment and sentence . . . ." *Id.* at 620; see *United States v. Sanchez,* 609 F.2d 761 (5th Cir. 1980) (jeopardy did not attach when the court conditionally accepted a guilty plea); *Santiago Soto,* 825 F.2d at 618 (jeopardy did not attach when court accepted guilty plea to a lesser-included offense, then rejected the plea without having imposed sentence and entered judgment); cf. *Ricketts v. Adamson,* 483 U.S. 1, 8 (1987) (Court "assume[s] that jeopardy attached at least when respondent was *sentenced* . . . on his plea of guilty" (emphasis added)); *United States v. Cruz,* 709 F.2d 111, 114 (1st Cir. 1983) ("We agree that jeopardy must attach somewhere and bar reconsideration at some point, but acceptance of the plea is not the only possible point.").

The issue here is not whether defendant was subjected to the kind of governmental overreaching that the double jeop-

ardy clause was designed to prevent. *Ohio v. Johnson*, 467 U.S. 493, 502 (1984). Rather, it is a much narrower and simpler one—whether the court ought to be able to correct a mistake. The court's decision not to appoint counsel for defendant was based on incomplete information. Defendant, who was in the best position to know the correct information, participated in this mistake; at arraignment, defendant told the court he "had a DWI seven years ago," but did not recount more recent convictions. No reason appears to justify defendant benefitting from the mistake. Therefore, given the false assumptions preceding the "acceptance" of the plea, the acceptance should have no more legal significance than the mistake that led to it. The court simply corrected the mistake by erasing the plea acceptance and proceeded to treat the case as it should have been treated from the outset. Although it would have been better practice for the court to have made a more thorough inquiry before determining whether defendant was entitled to appointed counsel, under the facts presented here jeopardy did not attach. And, even if we were to follow a procrustean analysis that jeopardy did attach, it was not irrevocable. *Santiago Soto*, 825 F.2d at 618; *Cruz*, 709 F.2d at 113–14.

## III.

We recognize that heavy caseloads sometimes prevent judges from acquiring the kind of knowledge that would allow them to make fully informed decisions about whether a jail sentence will be appropriate. The best solution to the problem is not to appoint a public defender in all doubtful cases. Judge Wolchik's investigation was perfunctory, but arraignment is a preliminary stage of the criminal proceeding. Much information that will be available at sentencing—about the crime, about the defendant—cannot be known at this stage no matter how diligent and thorough the judge is. The courts are overburdened now, but so also are the public defenders. Dilution of public defender resources with marginal cases will render the system less effective in dealing with defendants truly in need of its services. A better solution is to encourage more probing by judges and to allow reasonable room to correct mistakes.

*Affirmed.*

**Dooley, J.,** dissenting. This defendant was told that he would not be sentenced to jail. Relying on that promise, he pled guilty, admitted he committed the crime, and made other damaging admissions to a probation officer. Once the trial court learned the facts, many of which came out in reliance on the no-incarceration promise, it decided to dishonor the promise and sentence defendant to jail. The majority accepts this judicial breach of commitment. I believe it undermines the integrity of the judicial system, weakens our assignment-of-counsel system, and results in placing defendant in double jeopardy in violation of the Fifth Amendment. With reluctance, I must dissent.

I will start with the double jeopardy point. Because of its interrelationship with the right to counsel, I find it to be a more complex issue than the majority recognizes. I start with a point of agreement: the court could not have gone forward and sentenced defendant to a jail term based on his uncounseled guilty plea. That sentence would have been illegal under *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), as well as under 13 V.S.A. § 5231 and V.R.Cr.P. 44(a) because defendant's right to assignment of counsel for a serious crime was not honored. I think it is also agreed that assignment of counsel at sentencing cannot cure the defect. An accused has a constitutional right to assistance of counsel at all critical stages of a criminal proceeding unless the accused knowingly and intelligently waives that right. See *State v. Lombard*, 146 Vt. 411, 414, 505 A.2d 1182, 1184 (1985); *State v. Quintin*, 143 Vt. 40, 43, 460 A.2d 458, 460 (1983). The most critical stage of this proceeding was the uncounseled guilty plea, which is still being relied upon to establish the conviction.

It is clear to me that at the point the court accepted the plea of guilty, without condition, defendant was convicted of the crime. See *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."). The only thing remaining was for the court to impose a lawful sentence upon defendant, which, in this case, could not be any period of actual imprisonment. Thus, jeopardy attached as of the time when the court accepted the guilty plea. See *United States v. Sanchez*, 609 F.2d 761, 762 (5th Cir. 1980); *State v. Forbes*, 147

Vt. 612, 616, 523 A.2d 1232, 1234–35 (1987); cf. *Brown v. Ohio*, 432 U.S. 161, 162–65 (1977).

The basic protections of the double jeopardy clause of the Fifth Amendment are as follows:

> That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted), *quoted in State v. Rice*, 145 Vt. 25, 29, 483 A.2d 248, 250 (1984). There is no question that defendant here faced the possibility of a second prosecution for the same DUI offense. The trial court gave no indication that its acceptance of defendant's guilty plea was in any way conditional or "temporary." See, e.g., *United States v. Cruz*, 709 F.2d 111, 114 (1st Cir. 1983). Having once been convicted, a conviction on which a jail sentence could not be imposed, he was told that his remedy for the breach of the no-incarceration promise, and the resulting denial of counsel, was to submit to a second prosecution for the same offense—a second jeopardy. In other words, he was denied the *lawful* consequences of the first conviction on the basis that he could always choose reprosecution with counsel, exactly what the double jeopardy clause prohibits.

The majority seems to have two answers to the double jeopardy quandary: (1) defendant waived his double jeopardy right; and (2) the issue is only a stronger sentence, not a second conviction, and therefore double jeopardy does not apply. Neither answer works.

Once jeopardy attaches, it is a personal right and, in most instances, can be waived only by the voluntary act of the defendant. Thus, unless defendant voluntarily waives his right against double jeopardy, he cannot be prosecuted again for the same DUI charge. See *United States v. Anderson*, 514 F.2d 583, 586 (7th Cir. 1975). There is no voluntary waiver in this case; indeed, defendant refused to waive at all. He did no act that can be called a waiver. The waiver option was obviously coerced—it required him to forego a lawful and acceptable sentence in favor of the risk of an unfavorable sentence.

It is important to distinguish the situation here from one where defendant seeks to withdraw a plea of guilty because of the breach of a plea agreement. When the court imposes a harsher sentence than agreed upon in a plea agreement, it draws into question the voluntariness of the plea and, as a result, the entire conviction. *State v. Belanus*, 144 Vt. 166, 169, 475 A.2d 227, 228 (1984). Therefore, the court must permit the defendant to withdraw the guilty plea if he or she so desires in order to remove any taint of involuntariness. See *State v. Black*, 151 Vt. 253, 254–55, 558 A.2d 959, 960 (1988). Here, there is no question of the validity of the conviction; it is not involuntary and defendant seeks its benefit in a lawful sentence. The court's offer to withdraw a plea which is not in dispute has no curative effect in this case.

The second reason advanced by the majority is that this case involves only an increase in sentence and such an increase does not cause a second jeopardy. I agree that the imposition of a harsher sentence alone has no double jeopardy implications, but this principle has nothing to do with this case. It is not the harsher sentence, but the offer of a second prosecution for the same offense to cure the denial of the right to counsel, that causes the double jeopardy violation. It is true that once a defendant is found guilty and has been sentenced, the court may, in certain circumstances, increase the sentence without violating the defendant's right against double jeopardy. See *State v. Boyer*, 144 Vt. 393, 395, 481 A.2d 15, 16 (1984) (per curiam). In this case, however, the court was either attempting to increase defendant's sentence from a lawful one to an unlawful one or attempting to redo the guilt phase of the proceeding for the sole purpose of increasing the sentence. The first option is prohibited by the right to counsel, and the second option is exactly what the double jeopardy clause protects against. The conviction was obtained in violation of the right to counsel. The "cure" used by the trial court and accepted by the majority requires placing defendant twice in jeopardy in violation of the Fifth Amendment. The sentence cannot be sustained for these reasons.

Even if there were no specific violation of the right to counsel and the double jeopardy clause, I find the procedure here to lack the fundamental fairness that we must require in criminal

proceedings. This case does not involve a "sentencing forecast," as the majority characterizes it, but instead a firm, unequivocal promise—the court "will not sentence you to a period of imprisonment." Nor does this case involve a "mistake," as the majority characterizes the actions of the judge who did not appoint counsel. In fact, defendant disclosed, in response to a request from the court, that he was on probation for another offense.*

Relying on the court's promise and acting without the advice of counsel, defendant pled guilty and made numerous damaging statements to a probation officer, which in turn were used to breach the promise. Defendant does not present a sympathetic case, but the answer to such cases is to assign counsel in the first instance rather than to renege on firm pledges on how the system would treat an accused. The answer to an unsympathetic defendant is not a judicial system that refuses to honor its commitments.

I find this situation analogous to that the United States Supreme Court encountered in *Doyle v. Ohio*, 426 U.S. 610 (1976), where the issue was whether the State could use defendant's silence against him when the silence came after defendant received a *Miranda* warning stating that he had a right to remain silent. The Court found that an assurance that defendant would not be punished for silence was implicit in the warning and,

---

* The transcript of the arraignment reads as follows:

Judge: Reginald Duval? Mr. Duval is on probation at the present time?

Mr. Duval: Just barely placed on it, yes.

Public Defender: Actually, Your Honor, he was placed on probation subsequent to this offense so I don't think it could constitute a violation.

Judge: All right. And this is a charge of DWI first, so you can stand with him [counsel], but we're not grant [sic] him the service of a public defender.

Public Defender: All right.

Mr. Duval: I had a DWI seven years ago though.

Judge: This would be charges of first though, for purposes of punishment because it is more than five years old.

If I understand the majority's point that defendant "did not recount more recent convictions," he is supposed to volunteer the details of the convictions for which he was on probation in case those details were of significance to the appointment-of-counsel decision. I do not think it is reasonable to expect a pro se defendant to know that further disclosures should be made, or the significance of those disclosures. It is certainly not reasonable to expect any defendant to put his or her criminal history in its worst light to ensure an accurate decision on appointment of counsel.

therefore, that "it would be fundamentally unfair and a deprivation of due process to allow the . . . silence to be used to impeach." *Id.* at 618. I find it similarly unfair to use defendant's uncounseled admissions, made in reliance on a promise that he would not be incarcerated, to incarcerate him.

Finally, this case represents an undesirable practice in administering our assigned-counsel system, which can be corrected only if we say the resulting sentence is unacceptable. Instead of examining carefully the question of whether defendant deserved incarceration if convicted, or erring on the side of appointment of counsel in case defendant's record and circumstances warranted incarceration on conviction, the trial court did neither.

I recognize that the caseloads in district court sometimes prevent the judge from acquiring the detailed knowledge that allows for an informed judgment of what sentence will be appropriate on conviction. I also recognize that public defenders carry high caseloads. I cannot accept that we must trade basic integrity for a system that works a little bit better. If we must appoint counsel in doubtful or unknown cases in order to avoid firm promises that incarceration will not be imposed, to be revoked three months later, I consider this a price well worth paying.

I am authorized to state that the Chief Justice joins in this dissent.