STATE OF CONNECTICUT *v.* DERECK THOMAS
(SC 18368)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued December 1, 2009—officially released May 25, 2010

*Christine A. Janis*, assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *Timothy F. Costello,* deputy assistant state's attorney, and *Seth R. Garbarsky,* assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The issue raised by this interlocutory appeal is whether the double jeopardy clause of the fifth amendment to the United States constitution bars a trial court from vacating a previously accepted guilty plea if the court later determines, on the basis of new information uncovered during the presentence investigation, that the sentence contemplated by the plea agreement is inappropriate. The defendant, Dereck Thomas, appeals from the trial court's denial of his motion to dismiss the information.[1] We affirm the decision of the trial court.

The defendant pleaded guilty pursuant to a plea agreement, which the trial court initially accepted and later decided to vacate. The defendant claims, for the purpose of double jeopardy protection, that jeopardy attached at the moment the trial court accepted his guilty plea and, therefore, the trial court's subsequent decision to vacate his guilty plea and schedule his case for trial violates the prohibition against double jeopardy. For the reasons that follow, we disagree with the defendant's claim.

The record reveals the following relevant facts and procedural history. The defendant, a forty-seven year old male, engaged in both oral and vaginal sexual intercourse with the fifteen year old victim on four separate occasions in the spring of 2005. The state charged the defendant with four counts of sexual assault in the

---

[1] The defendant appealed from the trial court's denial of his motion to dismiss to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

second degree in violation of General Statutes § 53a-71,[2] and four counts of risk of injury to a child in violation of General Statutes § 53-21 (a).[3] Thereafter, the state and the defendant entered into plea negotiations in which the court, *Rubinow, J.*, participated. Instead of the state's offer of ten years imprisonment, suspended after five years served, the court indicated that it would accept five years imprisonment, suspended after one year served, and ten years of probation. Pursuant to the court's recommendation, the defendant pleaded guilty to one count of sexual assault in the second degree and one count of risk of injury to a child, and the state agreed to nolle the remaining six felony charges at the time of sentencing. During the plea canvass, the court explained to the defendant that "the sentence [it would] *likely impose* [would] be five years in jail suspended after you serve one full year in jail, but that *the victim's position may affect the court* so that you do the minimum mandatory nine months instead of the

---

[2] General Statutes § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person . . . .

"(b) Sexual assault in the second degree is a class C felony or, if the victim of the offense is under sixteen years of age, a class B felony, and any person found guilty under this section shall be sentenced to a term of imprisonment of which nine months of the sentence imposed may not be suspended or reduced by the court." Although § 53a-71 was amended by No. 07-143, § 1, of the 2007 Public Acts, those amendments have no bearing on the merits of this appeal. For convenience, we refer to the current revision of the statute.

[3] General Statutes § 53-21 provides in relevant part: "(a) Any person who . . . (2) has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a . . . class B felony . . . ." Although § 53-21 was amended by No. 07-143, § 4, of the 2007 Public Acts, those amendments have no bearing on the merits of this appeal. For convenience, we refer to the current revision of the statute.

potential maximum sentence." (Emphasis added.) The court further emphasized that "any credit against that one year would be based upon whether or not the victim was willing to make an appropriate statement to the court, as there have been great inconsistencies between the state's understanding of the victim's position and the position that was identified by the public defender." The court subsequently accepted the defendant's guilty plea, ordered a presentence investigation at the behest of the defendant and continued the matter for sentencing.

The presentence investigation revealed new and important information that had not been available to the court at the time of the plea negotiations.[4] Specifically, the presentence investigation report disclosed that the defendant had provided the victim with alcohol prior to engaging in sexual relations with her, that the victim had attempted suicide and had engaged in self-mutilation in the months following the sexual assaults and that the victim thought the defendant should go to jail for 100 years. Consequently, on the basis of the presentence investigation report, the state requested that the plea be vacated, arguing that "the defendant [should] be allowed to withdraw his pleas based on the fact that the [culpability revealed by the presentence investigation], in the state's view, is not commensurate with the sentence of one year." After reviewing the presentence investigation report, the court decided to convene a hearing to provide the victim an opportunity to testify regarding the incidents in question, and it deferred ruling on the state's motion to vacate the defendant's plea. In order to satisfy the mandate of article

---

[4] The record reveals that the trial court's initial impression of the case was based on four letters written by the victim to the defendant just after the defendant's arrest, which defense counsel had provided to the trial court during plea negotiations. The presentence investigation report provided a more complete and current picture of the victim's perspective.

first, § 8, of the constitution of Connecticut, as amended by articles seventeen and nineteen of the amendments, which is commonly known as the victims' rights amendment, the court stated that it would not "impose sentence until it has extended to the [victim] an opportunity to be heard." The defendant responded to the trial court's reluctance to sentence him in accordance with his initial plea bargain by filing a motion for specific performance of his plea agreement, which the court denied.[5]

The victim eventually appeared in court, answered all of the trial court's questions concerning her relationship with the defendant and provided the court with a better understanding of her position. The victim informed the court that the defendant had provided her with alcohol and performed sexual acts upon her while she was intoxicated, that in the wake of the defendant's crimes her acts of self-mutilation had intensified, that she eventually spent one year as a residential patient at a hospital and that the letters she wrote to the defendant, which the trial court had considered during the plea negotiations, did not represent the full extent of her "mixed emotions about the whole situation." The victim also expressed her belief that the defendant should be sentenced to ten years incarceration instead of the one year contemplated by the plea agreement. In light of the new information presented through the presentence investigation report and the victim's testimony, the court ultimately declined to impose the sentence contemplated in the plea agreement, vacated the defendant's guilty plea, noted pro forma pleas of not guilty on his behalf, and placed the matter on the trial list.

___

[5] The defendant challenged the trial court's denial of his motion for specific performance of the plea agreement in an appeal to the Appellate Court, but that court dismissed the appeal for lack of a final judgment. *State* v. *Thomas*, 106 Conn. App. 160, 170, 941 A.2d 394, cert. denied, 287 Conn. 910, 950 A.2d 1286 (2008). Shortly afterward, the defendant filed the motion to dismiss that is the subject of the present appeal.

Thereafter, the defendant filed a motion to dismiss the information, arguing that reinstatement of the original criminal charges would violate the constitutional guarantee against double jeopardy. He also claimed that, once the court accepted the guilty plea, it was bound to enforce the plea agreement.[6] The court denied the motion, reasoning that the court is not bound to impose a sentence that was conditionally agreed upon prior to the preparation of a presentence investigation report and that, for double jeopardy purposes, a judgment is not rendered until a sentence is actually imposed. This appeal followed.

On appeal, the defendant repeats his claim that reinstatement of the original criminal charges would violate the constitutional guarantee against double jeopardy. The state counters that the trial court properly denied

---

[6] The defendant claims that he is entitled to specific performance of his plea agreement because the agreement, once accepted, was binding on all parties. He argues that the trial court's refusal to enforce the plea agreement violated his right to due process. We decline to reach this claim because the defendant does not appeal from a final judgment. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Where an interlocutory appeal is allowed from the denial of a motion to dismiss on double jeopardy grounds, any additional issue raised in the appeal is not reviewable unless it independently satisfies the two prongs of the *Curcio* finality test. See *State* v. *Alvarez*, 257 Conn. 782, 797, 778 A.2d 938 (2001) (declining to review due process claim raised in interlocutory appeal with double jeopardy claim). Because the trial court's denial of the defendant's motion to dismiss neither "terminates a separate and distinct proceeding"; *State* v. *Curcio*, supra, 31; nor "so concludes the rights of the parties that further proceedings cannot affect them"; id.; the ruling does not constitute an appealable final judgment. Id. Further proceedings in the present case may affect the defendant in numerous ways. For example, the defendant may proceed to trial, which could result in an acquittal or the imposition of sentence more favorable to the defendant than the sentence contained in the defendant's plea agreement. Additionally, the defendant remains free to negotiate a new plea agreement, and, if he is dissatisfied with its parameters, the defendant may pursue his specific performance claim after the court imposes a sentence and renders a final judgment. Unlike the right to be free from retrial, the claimed right to a particular sentence need not be adjudicated in an interlocutory appeal to be effectively adjudicated.

the defendant's motion to dismiss because jeopardy does not attach upon the mere acceptance of a guilty plea that the trial court, in its discretion, later vacates before imposing sentence. We agree with the state and affirm the trial court's denial of the defendant's motion to dismiss.

As an initial matter, we note and the state concedes that the defendant's double jeopardy claim, though raised interlocutorily, is reviewable pursuant to *State v. Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). "It is axiomatic that appellate jurisdiction is limited to final judgments of the trial court. . . . [T]here is a small class of cases [however] that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. . . . *Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial, and, consequently, [is reviewable in an interlocutory appeal]* . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State v. Crawford*, 257 Conn. 769, 774–75, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). The defendant's claim that the trial court violated the constitutional prohibition against double jeopardy by vacating his guilty plea and scheduling his matter for trial constitutes a colorable double jeopardy claim. Accordingly, it falls squarely within the small class of claims reviewable in an interlocutory appeal.

We now turn to the merits of the defendant's double jeopardy claim. In denying the defendant's motion to dismiss, the trial court reasoned that the defendant could not raise a double jeopardy claim until a judgment

had been rendered or a sentence had been imposed and stressed that a defendant has no right to enforce a proposed sentence that was agreed to prior to the preparation of a presentence investigation report. Although our reasoning differs slightly from that of the trial court, we agree that, under the circumstances of this case, the decision to vacate the defendant's plea did not violate the guarantee against double jeopardy.

At the outset, we set forth the standard of review. A criminal defendant may raise the defense that a "[p]revious prosecution bar[s] the present prosecution" in a motion to dismiss. Practice Book § 41-8 (6). "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo." *State* v. *Rivers*, 283 Conn. 713, 723–24, 931 A.2d 185 (2007).

The general principles of double jeopardy are well established. The double jeopardy clause of the United States constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ."[7] U.S. Const., amend. V. The double

---

[7] The double jeopardy prohibition of the fifth amendment extends to state prosecutions through the fourteenth amendment to the United States constitution. See *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). "The constitution of Connecticut does not contain an express prohibition against double jeopardy. Instead, we repeatedly have held that the due process guarantees, presently encompassed in article first, § 8, of the Connecticut constitution, include protection against double jeopardy." *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005).

In *Michael J.*, we noted that the exclusion of a textual ban on double jeopardy from the state constitution was by design and that, before the fifth amendment was made applicable to the states, Connecticut historically maintained one of the least protective double jeopardy doctrines in the nation. Id., 350–51. It therefore follows that "[t]he Connecticut constitution provides coextensive protection, with the federal constitution, against double jeopardy." *State* v. *Ferguson*, 260 Conn. 339, 360, 796 A.2d 1118 (2002). Moreover, "[b]ecause the defendant has not presented a separate analysis

jeopardy clause provides several protections—it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The policy justifications for prohibiting successive prosecutions include: (1) furthering society's interest in protecting the integrity of final judgments; and (2) protecting individuals from prosecutorial overreaching and the continued embarrassment, anxiety and expense associated with repeated attempts to convict. *Garrett* v. *United States*, 471 U.S. 773, 795, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985) (O'Connor, J., concurring); *Ohio* v. *Johnson*, 467 U.S. 493, 498–99, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984).

The double jeopardy clause will bar a second prosecution only if "jeopardy attach[ed]" in an earlier proceeding. *Serfass* v. *United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). "[T]he conclusion that 'jeopardy attaches' . . . expresses a judgment that the constitutional policies underpinning the [f]ifth [a]mendment's guarantee are implicated at that point in the proceedings." *United States* v. *Jorn*, 400 U.S. 470, 480, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). In a jury trial, "jeopardy attaches when a jury is empanelled and sworn." *Serfass* v. *United States*, supra, 388. In a trial before the court, "jeopardy attaches when the court begins to hear evidence." Id. In the present case, the defendant claims that jeopardy attached at the moment the trial court accepted his guilty plea.

The United States Supreme Court has yet to decide when jeopardy attaches in a case disposed of by a guilty

of his double jeopardy claim under the state constitution, we confine our analysis to the application of the federal constitution's double jeopardy bar." (Internal quotation marks omitted.) *State* v. *Butler*, 262 Conn. 167, 174 n.6, 810 A.2d 791 (2002).

plea, although it has assumed that jeopardy attaches at least by the time of *sentencing* on the plea. *Ricketts* v. *Adamson*, 483 U.S. 1, 8, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987).[8] In the absence of definitive guidance from the United States Supreme Court, federal and state courts

---

[8] The United States Supreme Court has recognized that a guilty plea can differ from an actual conviction. *Ohio* v. *Johnson*, supra, 467 U.S. 500 n.9. In *Johnson*, the defendant was indicted on four related offenses. Id., 494. The defendant pleaded guilty to two of the offenses, which were lesser included offenses of the remaining two. Id. The issue in *Johnson* was whether the defendant's guilty plea to the lesser included offenses barred the continued prosecution of the remaining greater offenses. Id., 500.

Although the United States Supreme Court had previously ruled that "the [d]ouble [j]eopardy [c]lause prohibits prosecution of a defendant for a greater offense when he has already been tried and acquitted or convicted on the lesser included offense"; id., 501, citing *Brown* v. *Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); the court rejected the defendant's double jeopardy claim in *Johnson* because the double jeopardy clause, while it "may protect a defendant against cumulative punishments for convictions on the same offense . . . does not prohibit the [s]tate from prosecuting [a defendant] for such multiple offenses in a single prosecution." *Ohio* v. *Johnson*, supra, 467 U.S. 500. The court concluded that the continued single prosecution of the defendant in *Johnson* on the remaining greater offenses did not implicate the principles of finality and prevention of prosecutorial overreaching that are protected by the double jeopardy clause and were implicated in *Brown*. Id., 501. In reaching that conclusion, the court recognized that "the taking of a guilty plea is not the same as an adjudication on the merits after full trial"; id., 500 n.9; and emphasized that "[t]he acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending . . . has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses." Id., 501–502.

We recognize that the United States Supreme Court has stated, in an entirely different context, that a guilty plea constitutes a conviction. See *Kercheval* v. *United States*, 274 U.S. 220, 223, 47 S. Ct. 582, 71 L. Ed. 1009 (1927) (rejecting government's claim that defendant's guilty plea was similar to confession and holding that guilty plea differs in purpose and effect from confession because guilty plea is "itself a conviction"). Although the defendant's double jeopardy claim in the present case relies heavily on the court's conclusion in *Kercheval* that a guilty plea is a conviction; id.; *Kercheval* did not involve a double jeopardy claim, and the United States Supreme Court did not reach its conclusion in the double jeopardy context.

In *Kercheval*, the defendant pleaded guilty to mail fraud charges, was sentenced to a term of three years, and challenged his sentence as excessive

have split on the question. See *State* v. *Thomas*, 106 Conn. App. 160, 184 n.5, 941 A.2d 394 (*Bishop, J.*, dissenting) (recognizing split and compiling cases), cert. denied, 287 Conn. 910, 950 A.2d 1286 (2008).

Courts have focused on the following four considerations when deciding the point at which jeopardy attaches to a guilty plea: (1) whether the court has accepted the defendant's guilty plea; (2) whether the court has rendered judgment and sentenced the defendant; (3) whether the court's acceptance of the plea was conditional; and (4) whether the circumstances surrounding the court's acceptance of the plea implicate the policy concerns underlying the double jeopardy protection. The first two considerations focus on specific points in the judicial process. For instance, some courts have held that jeopardy attaches at the moment the court accepts the defendant's guilty plea. See, e.g., *State* v. *McAlear*, 519 N.W.2d 596, 600 (S.D. 1994) ("[j]eopardy attaches as soon as the plea is accepted, even before the defendant is sentenced"). Conversely, other courts have held that jeopardy does not attach until the court renders judgment and sentences the defendant. See, e.g., *State* v. *Angel*, 132 N.M. 501, 503, 51 P.3d 1155 (2002) ("[w]e do not believe jeopardy attached to [the] [d]efendant's plea prior to being sentenced on the misdemeanor charges"). The last two considerations focus on the nature of the court's acceptance of a guilty plea.

because the prosecution had induced his guilty plea by promising that, on the state's recommendation, the court would impose a small fine and a sentence of only three months. Id., 221. The court declined to change the defendant's sentence, but set aside the judgment and allowed the defendant to withdraw his guilty plea and proceed to trial. Id. In the subsequent trial, the court allowed the prosecution to introduce the defendant's withdrawn guilty plea as evidence of guilt. Id., 222. The issue on appeal, therefore, was not whether the defendant's initial guilty plea constituted a conviction for double jeopardy purposes. Rather, the issue was whether the trial court improperly allowed evidence of the defendant's guilty plea. Id., 222–23. Arguably, the fact that there even *was* a trial suggests that jeopardy did not attach upon acceptance of the defendant's plea.

For instance, some courts have held that jeopardy attaches only if the court unconditionally accepts the defendant's plea. See, e.g., *United States* v. *Baggett*, 901 F.2d 1546, 1548 (11th Cir. 1990) (jeopardy attaches when court *unconditionally* accepts guilty plea). Other courts have held that jeopardy attaches only if the circumstances surrounding the court's acceptance of the plea implicate the policy concerns underlying the double jeopardy protection. See, e.g., *State* v. *Duval*, 156 Vt. 122, 127–28, 589 A.2d 321 (1991) (jeopardy did not attach when defendant was not subjected to type of prosecutorial impropriety double jeopardy clause was designed to prevent).

The competing methods for determining when jeopardy attaches to a guilty plea are distinguished primarily by the degree to which the reviewing courts equate a guilty plea to a conviction. Compare *Morris* v. *Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001) (finding that jeopardy attaches to guilty plea because "a guilty plea is a conviction . . . and . . . the [d]ouble [j]eopardy [c]lause protects against a second prosecution for the same offense after conviction" [citation omitted; internal quotation marks omitted]) with *United States* v. *Santiago Soto*, 825 F.2d 616, 619 (1st Cir. 1987) ("acceptance of a guilty plea is legally different from a conviction based on a jury's verdict" and holding jeopardy did not attach when court accepted guilty plea then rejected it without having imposed sentence and rendered judgment).

This appeal presents our first opportunity to confront directly the question of whether jeopardy necessarily attaches upon the trial court's acceptance of a guilty plea. The defendant urges us to follow the line of cases that hold that jeopardy attaches at the moment the trial court accepts the defendant's guilty plea.[9] The state

[9] The defendant points out that the United States Court of Appeals for the Second Circuit is among the majority of federal circuits that follows the simple rule that jeopardy attaches upon the mere acceptance of a guilty plea; see, e.g., *United States* v. *Olmeda*, 461 F.3d 271, 279 (2d Cir. 2006)

argues that such a bright line rule is too rigid and that the cases that consider whether jeopardy attaches to a guilty plea by analyzing the particular circumstances relating to the guilty plea in light of the policy considerations underlying the double jeopardy protection are more persuasive. We agree with the state.

These competing lines of cases are derivatives of the general rule that jeopardy attaches when a court *unconditionally* accepts a guilty plea and renders judgment of conviction. See 6 W. LaFave, J. Israel & N. King, Criminal Procedure (3d Ed. 2007) § 25.1 (d), p. 587. We emphasize at the outset that, in the present case, as a matter of Connecticut law, the trial court's acceptance of the defendant's guilty plea was *conditioned* upon the results of the presentence investigation. A trial court lacks the authority to unconditionally accept a guilty plea prior to considering the results of a pending presentence investigation report. See Practice Book § 43-10.[10]

"Modern precepts of penology require that the discretion of a sentencing judge to impose a just and appro-

(double jeopardy protection "clearly prohibits a second prosecution for the same offense following a guilty plea" [internal quotation marks omitted]); *United States* v. *Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir. 1979) ("it is axiomatic of the double jeopardy clause that jeopardy attached once [the defendant's] guilty plea was accepted"); and argues that, because this is an issue of federal law, we should adhere to the precedent of the Second Circuit Court of Appeals. Second Circuit decisions, however, "although often persuasive, are not binding on this court . . . ." *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 89 n.24, 952 A.2d 1 (2008).

[10] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty . . . the judicial authority shall . . . conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion . . . to explain or controvert the presentence investigation report . . .

"(2) The judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed. . . ."

priate sentence remain unfettered throughout the sentencing proceedings. Where a presentence investigation report is statutorily mandated, a judge cannot make any promise or determination of the sentence he will impose before he has reviewed the report. . . . Moreover, [u]ntil sentence is pronounced, the trial court maintains power to impose any sentence authorized by law; and, though the sentencing judge may be conscience-bound to perform his own prior agreements with counsel and the parties, the court is not in law bound to impose a sentence that once seemed, but no longer seems, just and appropriate. . . . In those circumstances in which the judge cannot in conscience impose the sentence conditionally promised, it has been uniformly recognized that the only obligation he has is to grant the defendant the opportunity to withdraw his guilty plea." (Citations omitted; emphasis added; internal quotation marks omitted.) State v. DeJesus, 10 Conn. App. 591, 603–604, 524 A.2d 1156 (1987). Therefore, once the trial court ordered the presentence investigation, the trial court's acceptance of the defendant's plea agreement necessarily became contingent upon the results of the presentence investigation report. Otherwise, the presentence investigation report would be little more than a nullity, and our law makes clear that these reports are to play a significant role in reaching a fair sentence. Simply put, any plea agreement "must be contingent upon its acceptance by the court after [the court's] review of the presentence investigation report." State v. Schaeffer, 5 Conn. App. 378, 387, 498 A.2d 134 (1985).

Additionally, in accordance with the victims' rights amendment of our state constitution, the court must provide an opportunity for the victim to meaningfully participate in the defendant's sentencing.[11] Article first,

---

[11] The legislative history of the victims' rights amendment demonstrates the legislature's clear intent to provide crime victims with the opportunity to participate meaningfully in the sentencing and plea bargaining process.

§ 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "b. In all criminal prosecutions, a victim, as the general assembly may define by law,[12] shall have . . . (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; [and] (8) the right to make a statement to the court at sentencing . . . ." As is the case with the presentence investigation, when the victim chooses to make a statement, acceptance of a guilty plea must be contingent upon hearing

For instance, during debate in the House of Representatives, Representative Michael Lawlor remarked that this amendment would provide victims a "true role in the process" and that it would address the recurring concern among the crime victims advocating for the adoption of the amendment that they should no longer be excluded from the plea bargaining process. 39 H.R. Proc., Pt. 9, 1996 Sess., p. 2808. Also, Representative Dale Radcliffe, a cosponsor of the amendment, responded to a question from Representative Robert Farr regarding the proposed victim's right to object to a plea agreement by stating that adoption of the amendment would "[e]nsure that at the stage where a plea bargain is put on the record, at the stage where the court has canvassed a defendant, a victim has a meaningful right to be heard." Id., p. 2859.

Likewise, Senator Thomas Upson commented on the need to codify the victims' rights in the state constitution as follows: "We've had many cases where most victims feel that they're not treated equally in the system with criminals and that their rights are not paid attention to. Certainly, by [codifying] . . . these rights into the [c]onstitution of the [s]tate of Connecticut [we] will guarantee . . . that [victims] will have the utmost rights throughout our judicial system." 39 S. Proc., Pt. 6, 1996 Sess., p. 1980. Senator Kevin Sullivan built on Senator Upson's remarks and stated that the victims' rights amendment would give victims a voice and give "them a part in the process that determines the fate of those that have struck at them as criminals." Id., p. 1982. Senator Melodie Peters went on to state that "as a victim, there has to be an opportunity to be considered seriously and to truly be recognized for the experience that you've gone through." Id., p. 1983.

[12] General Statutes § 1-1k provides in relevant part: "Except as otherwise provided by the general statutes, 'victim of crime' or 'crime victim' means an individual who suffers direct or threatened physical, emotional or financial harm as a result of a crime and includes immediate family members of a minor . . . ."

from the victim in order to provide the victim with a meaningful right to participate in the plea bargaining process.

Accordingly, when a presentence investigation is pending and the court is awaiting a victim's anticipated statement, any acceptance of the defendant's guilty plea is conditioned implicitly on the results of the presentence investigation report and the victim's statement. Thus, this case does not present a situation in which jeopardy should attach because the court has unconditionally accepted a guilty plea.

Moreover, the cases relied on by the defendant neither consider the conditional nature of the acceptance of the guilty plea nor analyze policy concerns underlying the double jeopardy protection. See, e.g., *United States* v. *Olmeda*, 461 F.3d 271, 279 (2d Cir. 2006) ("[d]ouble jeopardy clearly prohibits a second prosecution for the same offense following a guilty plea" [internal quotation marks omitted]); *State* v. *McAlear*, supra, 519 N.W.2d 600 ("[j]eopardy attaches as soon as the plea is accepted, even before the defendant is sentenced"). We find far more persuasive the line of cases holding that the acceptance of a guilty plea prior to sentencing does not necessarily implicate the same double jeopardy policy concerns as a conviction after a full trial on the merits. See *United States* v. *Sanchez*, 609 F.2d 761, 763 (5th Cir. 1980) (jeopardy did not attach upon acceptance of guilty plea conditioned on court's consideration of pending probation report); *State* v. *Burris*, 40 S.W.3d 520, 525 (Tenn. Crim. App. 2000) (jeopardy did not attach upon acceptance of plea and noting defendants "should not be entitled to use the [d]ouble [j]eopardy [c]lause as a sword to prevent the [s]tate from completing its prosecution . . . when the policies behind the clause are not at issue and the ends of justice will be defeated through a mechanical application of the clause" [citation omitted; internal quotation marks

omitted]); *State* v. *Duval*, supra, 156 Vt. 127 ("[T]he rule is only that jeopardy 'generally' attaches at the time of acceptance of the guilty plea . . . [and] the rule has exceptions. The attachment of jeopardy upon the court's acceptance of a guilty plea is neither automatic nor irrevocable." [Citation omitted.]).

We are persuaded that the acceptance of a guilty plea is legally different from a conviction based on a jury's verdict, and, therefore, that jeopardy does not necessarily attach automatically upon the acceptance of a guilty plea as it does to an actual judgment of conviction. See *United States* v. *Santiago Soto*, supra, 825 F.2d 620 ("[t]he mere acceptance of a guilty plea does not carry the same expectation of finality and tranquility that comes with a jury's verdict or with an entry of judgment and sentence"). This is particularly so when, as here, the trial court's acceptance of the guilty plea is conditional. See *Bally* v. *Kemna*, 65 F.3d 104, 107–108 (8th Cir. 1995) (jeopardy attaches when trial court *unconditionally* accepts guilty plea); *United State* v. *Baggett*, supra, 901 F.2d 1548 (same).

In our view, the acceptance of a defendant's guilty plea should not trigger double jeopardy protection unless the facts and circumstances surrounding the guilty plea implicate the policy considerations underlying the double jeopardy clause. See *Ohio* v. *Johnson*, supra, 467 US. 501 (rejecting defendant's double jeopardy claim because continued prosecution did not implicate any "interest . . . protected by the [d]ouble [j]eopardy [c]lause"); see also *Illinois* v. *Somerville*, 410 U.S. 458, 467, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973) (rejecting use of "rigid, mechanical" rules when interpreting and applying double jeopardy clause); *Bally* v. *Kemna*, supra, 65 F.3d 108 (declining to fashion bright line rule concerning when jeopardy attaches to guilty plea). Accordingly, we must consider the defendant's double jeopardy claim in light of the twin aims of the

double jeopardy clause—protecting a defendant's finality interest and preventing prosecutorial overreaching. See *United States* v. *Patterson*, 406 F.3d 1095, 1097 (9th Cir. 2005) (Kozinski, J., dissenting) (recognizing that United States Supreme Court's analysis in *Johnson*, which focused on whether double jeopardy policy justifications were implicated, "provided a framework . . . for determining whether jeopardy attaches when a defendant pleads guilty").

We first consider whether the trial court's acceptance of the defendant's plea gave him an expectation of finality sufficient to trigger double jeopardy protection. The key factors in making that determination include the nature of the plea agreement and the degree to which the trial court's acceptance was equivocal or contingent on the introduction of new information. See *State* v. *Todd*, 654 S.W.2d 379, 383 (Tenn. 1983) ("[J]eopardy does not attach at a hearing on a guilty plea until the plea is unconditionally accepted. . . . Until a final judgment is entered a court is free to reject the plea and plea agreement. . . . Rejection of one is rejection of the other." [Citations omitted.]). Here, the totality of circumstances surrounding the trial court's acceptance of the plea and continuation of the case for sentencing clearly indicated that the case had not concluded. Not only did the trial court lack authority to unconditionally accept the defendant's plea, but the defendant was notified that his ultimate sentence was contingent upon the results of a presentence investigation as well as the victim's constitutionally required input.[13] Moreover, the rules of practice allow a trial court to abandon a previously accepted plea agreement due to the presenta-

---

[13] During the plea canvass, the trial court stressed the need to hear from the victim due to the "great inconsistencies between the [s]tate's understanding of the victim's position and the position that was identified by the public defender." The court clearly stated that the resolution of this inconsistency would determine the length of the defendant's sentence.

tion of new information uncovered by a presentence investigation report, impose a harsher sentence and give the defendant the option of withdrawing his plea.[14] In essence, that is what happened here. Finally, under his plea agreement, the defendant pleaded guilty to only two of the eight pending charges, and the state deferred dismissal of the remaining charges until sentencing. Thus, the defendant could not reasonably have believed that his prosecution would be complete until he was sentenced and all of the remaining charges against him

[14] See, e.g., Practice Book § 39-7 (allowing trial court to defer accepting plea until completion of presentence report); Practice Book § 39-9 (requiring trial court to warn defendant actual sentence may differ from sentence contemplated in plea agreement and advise defendant of right to withdraw plea if such difference occurs); Practice Book § 39-27 (3) (allowing defendant to withdraw plea if actual sentence exceeds that specified in plea agreement, or if trial court deferred its decision to accept or reject plea); Practice Book § 39-28 (requiring that original guilty plea be vacated and further proceedings scheduled if defendant allowed to withdraw original plea).

Notably, the defendant was given the opportunity to have Judge Rubinow articulate the sentence she would have imposed on the basis of the new information, but the defendant refused that opportunity. The procedure employed by the trial court may not have been fully in compliance with the rules of practice; see Practice Book §§ 39-9, 39-26 and 39-27; but the defendant does not claim that that circumstance gives rise to a double jeopardy violation. Cf. *United States* v. *DiFrancesco*, 449 U.S. 117, 135, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980) ("[t]he [c]onstitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner" [internal quotation marks omitted]).

Instead, the defendant claims that the trial court's failure to articulate clearly the conditional nature of its acceptance, coupled with its subsequent decision to vacate the defendant's plea constitutes plain error. The plain error doctrine "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Domian*, 235 Conn. 679, 692, 668 A.2d 1333 (1996). Here, despite the trial court's imprecise application of the rules of practice, the trial court mitigated any potential harm to the defendant by vacating the defendant's plea. The court's decision to vacate the plea placed the defendant in the position he occupied before the court accepted his plea, thereby restoring the rights the defendant initially waived by pleading guilty. The actions of the trial court do not amount to the type of "manifest injustice" a defendant must demonstrate in order to prevail on a claim of plain error. Id.

were dismissed. In sum, the defendant did not have a reasonable expectation of finality in his plea agreement because the trial court's acceptance of his plea was conditional rather than unequivocal.

We next consider whether this case involves the kind of prosecutorial overreaching that the double jeopardy clause was designed to prevent. "The constitutional prohibition against double jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." (Internal quotation marks omitted.) *Green* v. *United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). The United States Supreme Court has recognized that "the [s]tate with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Id., 187–88.

A classic example of the type of prosecutorial overreaching the double jeopardy clause is aimed at preventing would be an attempt by the prosecution to induce a mistrial so as to manufacture a second chance to try a defendant. See *Oregon* v. *Kennedy*, 456 U.S. 667, 675–76, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (prosecutorial impropriety bars retrial only if conduct was specifically designed to provoke mistrial, motivated by bad faith or undertaken to harass or prejudice defendant); *State* v. *Michael J.*, 274 Conn. 321, 345, 348, 875 A.2d 510 (2005) (applying *Kennedy*); *State* v. *Butler*, 262 Conn. 167, 175–77, 810 A.2d 791 (2002) (same). The double jeopardy clause bars such attempts because otherwise the prosecution would be able to test trial strategies, rehearse evidence and, perhaps, in a trial where it appeared that the defendant was mounting a

strong defense, deprive the defendant of a potential acquittal. Also, a second trial following a mistrial induced by prosecutorial impropriety clearly would subject the defendant to the type of embarrassment, expense, anxiety and insecurity the double jeopardy clause is aimed at preventing.

This case does not involve prosecutorial overreaching or implicate any fundamental double jeopardy policy concerns. The plea agreement did not require the defendant to do anything other than plead guilty. This is not a case in which the state reneged on a plea agreement after it obtained a benefit from the defendant, such as testimony or cooperation in another case. Nor has the state brought a second prosecution against the defendant after testing out evidence or theories in a previous prosecution. Rather, in this single prosecution, the *trial court* conditionally accepted the defendant's plea and later, after it received the presentence investigation report and statement from the victim, decided to abandon the defendant's plea agreement and vacate his plea. Cf. *United States* v. *Santiago Soto*, supra, 825 F.2d 620 (defendant not placed in jeopardy in meaningful sense when "judge initially accepted the guilty plea but then rejected it within the same proceeding"). The defendant, therefore, is challenging the *trial court's* decision to vacate his plea and schedule his matter for trial. Simply put, there has been no prosecutorial overreaching. See *State* v. *Duval*, supra, 156 Vt. 127–28 ("The issue here is not whether [the] defendant was subjected to the kind of governmental overreaching that the double jeopardy clause was designed to prevent. . . . Rather, it is a much narrower and simpler one—whether the court ought to be able to correct a mistake." [Citation omitted.]). Following vacation of his plea, the defendant was returned to precisely the same position he had occupied before entering the plea.

Because this case does not meaningfully implicate any policy considerations underlying the double jeopardy clause, we hold that jeopardy did not attach to the trial court's conditional acceptance of the defendant's plea. Accordingly, we affirm the trial court's denial of the motion to dismiss.[15]

The denial of the defendant's motion to dismiss is affirmed.

In this opinion the other justices concurred.

---

[15] Our holding is limited to a determination that the mere acceptance of a defendant's guilty plea does not, in and of itself, trigger double jeopardy protection.