# STATE OF CONNECTICUT *v.* PETER TARASCO
## (SC 18310)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued February 16—officially released May 31, 2011

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former state's attorney, and *John J. Davenport*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Peter Tarasco, appeals directly[1] from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims only that the trial court, in fashioning his sentence, improperly considered his trial testimony relative to his drug dealing, thus burdening the defendant's right to testify in his own defense.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts, which the jury reasonably could have found, and procedural history. On the evening of September 5, 2006, the defendant and several other individuals were selling drugs on a street in Waterbury. Later in the evening, a member of the defendant's party, Joey Figueroa, began arguing with another individual, Brent "Slim" Campbell, who lived across the street. Another group of individuals, including the victim, Jeffrey Macklin, eventually arrived at the scene to support Campbell. The victim quickly began arguing with the defendant's party, and, shortly thereafter, the defendant shot him, mortally wounding him.

The state charged the defendant with murder in violation of § 53a-54a. During trial, the defendant claimed

---

[1] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b) (3).

[2] The defendant originally claimed on appeal that the trial court had improperly denied his motion to dismiss counsel, which he had filed shortly before his trial began. The defendant has since withdrawn that claim.

that he had shot the victim in self-defense. In support of that defense, the defendant testified during direct examination that he had been engaged in dealing drugs on the night of the murder. The jury rejected this claim of self-defense and returned a verdict finding the defendant guilty of murder.

During the subsequent sentencing hearing, the trial court stated that it considered the defendant's drug dealing since the age of fourteen, in the absence of any personal substance abuse issues, to be an aggravating factor.[3] That court also stated that it had reviewed the defendant's presentence investigation report, and the prosecutor, defense attorney and court frequently referred to that report throughout the sentencing hearing. The trial court subsequently sentenced the defendant to a total effective sentence of fifty years imprisonment.[4] This appeal followed.

On appeal, the defendant claims that, in sentencing him, the trial court improperly considered his testimony relative to his drug dealing and, by doing so, "unfairly

---

[3] The trial court stated: "A factor that weighs heavily with the court is the drug dealing. Yes, I agree with [defense counsel], [the defendant is] not being sentenced for drug dealing. That's true, but not totally true. The charge of drug dealing is not in front of me, but what weighs heavily with this court is the fact that this gentlemen, apparently [having] no substance abuse issues, was selling drugs by his own account, and they were there dealing in drugs on that street on that night. That is, in my opinion . . . an aggravating factor, because every day to earn his living [the defendant] spreads misery throughout our community. And whatever ripple effect that has in the community, I can't say, I'm not going to speculate or hold it against this defendant, but I can hold it against him that he makes his living by dealing in drugs. That's an outrage. And the sad reality is, by his own account, that he's been doing that since age fourteen.

\* \* \*

"The aggravating factors here are . . . [n]umber two, he's made his living by selling drugs, an activity which tears at the very fabric of our society. He did it for the money apparently. And that's an aggravating factor that he didn't apparently have a substance abuse problem."

[4] Prior to the sentencing hearing, the trial court denied the defendant's motion for a new trial.

penalized [the] defendant for taking the stand and testifying in his own defense." In response, the state contends that: (1) the defendant's unpreserved claim is not reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989);[5] (2) the trial court's consideration of the defendant's drug dealing was proper; and (3) any error was harmless. We agree with the state and conclude that the trial court properly considered the defendant's drug dealing when fashioning his sentence.

The defendant initially concedes that his claim is unpreserved but seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40. Although we conclude that the record is adequate for review, and the defendant's claim is of constitutional magnitude, to the extent that it is framed as a violation of his sixth amendment right to testify in his own defense; see, e.g., *Rock* v. *Arkansas*, 483 U.S. 44, 51, 107 S. Ct. 2704, 97 L. Ed. 2d 381 (1987) ("the right to testify on one's own behalf at a criminal trial has sources in several provisions of the [c]onstitution"); we also conclude that the claimed constitutional violation did not occur. The defendant's claim fails, therefore, under the third prong of *Golding*.

At the outset, we first note the well established principle that a defendant may not be penalized for declining to testify at trial. See, e.g., General Statutes § 54-84 (prohibiting court or prosecutor from commenting negatively on defendant's silence at trial); *State* v. *Gant*, 286 Conn. 499, 539, 944 A.2d 947 ("[i]t is well settled

---

[5] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution" [internal quotation marks omitted]), cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008). As a corollary, a trial court similarly may not punish a defendant for testifying in his own defense. See *State* v. *Coleman*, 14 Conn. App. 657, 675, 544 A.2d 194 ("[j]ust as the defendant's constitutional right to silence may not be unduly burdened . . . his constitutional right to testify, which is a corollary of his right to silence, must also be regarded as being free from undue cost" [citation omitted]), cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).

We also note that it is well settled that "[a] sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial." (Internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 649, 858 A.2d 767 (2004). Information considered during sentencing need only have "some minimal indicium of reliability." (Internal quotation marks omitted.) Id., 650. Moreover, it is axiomatic that the trial court must consider during sentencing the information contained in a presentence investigation report. See General Statutes § 54-91a[6] (requiring trial court to consider presentence investigation report before sentencing); see also *State* v. *Thomas*, 296 Conn. 375, 389, 995 A.2d 65 (2010) ("our law makes clear that [presentence investigation] reports are to play a significant role in reaching a fair

[6] General Statutes § 54-91a provides in relevant part: "(a) No defendant convicted of a crime, other than a capital felony, the punishment for which may include imprisonment for more than one year, may be sentenced, or the defendant's case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if the defendant is so convicted for the first time in this state; but any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense other than a capital felony. . . ."

sentence"); *State* v. *Patterson*, 236 Conn. 561, 574, 674 A.2d 416 (1996) ("[t]he sole purpose [of a presentence investigation report] is to enable the court, within limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime" [internal quotation marks omitted]). Indeed, "our rules of practice . . . envision that the court will rely on the [presentence investigation] report during the sentencing process." *State* v. *Peay*, 96 Conn. App. 421, 445, 900 A.2d 577, cert. denied, 280 Conn. 909, 908 A.2d 541 (2006); see also Practice Book § 43-10 (1).

Thus, we turn to the factual basis for the defendant's claim, namely, that the trial court improperly relied on his testimony in considering his drug dealing as an aggravating sentencing factor. In his brief, the defendant posits that there is "no doubt that the [trial] court learned of [the] defendant's drug dealing through [the] defendant's testimony and acknowledged that fact at the sentencing." Although we acknowledge the defendant's testimony to that effect, we conclude that the question of the trial court's consideration of that testimony is irrelevant because that court clearly relied on other independent sources for the fact of the defendant's drug dealing, meaning that it could not possibly have penalized the defendant for testifying at trial. During sentencing, the trial court expressly referenced facts pertinent to the defendant's drug dealing that could only have been taken from the presentence investigation report, rather than from the defendant's trial testimony. Specifically, the trial court mentioned the defendant's "own account" that he had been selling drugs since he was fourteen years old, a fact expressly stated in the presentence investigation report and notably absent from the defendant's trial testimony. The trial court also stated that the defendant "didn't apparently have a substance abuse problem," a conclusion that could not have been reached on the basis of the defendant's

trial testimony, but was a topic frequently discussed in the presentence investigation report. Accordingly, we conclude that the defendant's claim lacks merit, to the extent that it challenges the trial court's consideration of the defendant's history of selling drugs and substance abuse, because the trial court properly obtained this information from the presentence investigation report when sentencing the defendant. See, e.g., *State* v. *Thomas*, supra, 296 Conn. 389.

Moreover, two other witnesses independently corroborated the fact of the defendant's drug dealing. Specifically, the defendant's testimony that he was in Connecticut selling drugs on the night of the murder was corroborated by the testimony of Figueroa and Anthony Martinez, both of whom were with him on the night in question. Thus, the record also contained independent sources of the challenged information. We conclude, therefore, that the trial court's consideration during sentencing of the defendant's drug dealing did not operate to penalize him for testifying in his own defense.[7]

The judgment is affirmed.

In this opinion the other justices concurred.

PALMER, J., concurring. I agree with the majority's conclusion that the trial court properly considered, for

[7] *State* v. *Coleman*, supra, 14 Conn. App. 657, relied on by the defendant, is inapposite. In *Coleman*, the defendant challenged, inter alia, the trial court's jury instructions regarding inferences that the jury could make from its disbelief of his testimony. Id., 665. The Appellate Court concluded that these jury instructions had impermissibly burdened the defendant's right to testify because they "permitted the jury to conclude that, if it disbelieved the defendant's testimony, the contrary of that testimony was true." Id., 674–76. In the present case, any consideration of the defendant's testimony by the trial court during sentencing was based on corroborated facts to which the defendant himself had testified, and thus did not require the trial court to draw any impermissible inferences based on the trial court's disbelief of his testimony.

sentencing purposes, the fact that the defendant, Peter Tarasco, engaged in drug dealing. I also agree with the majority that, even though the defendant testified at trial concerning his drug dealing activities, details of those activities are set forth in the presentence investigation report, and that report apparently served as a primary source of information concerning the defendant's drug dealing. I therefore join the majority opinion.

Although the record indicates that the trial court also may have considered the defendant's own testimony acknowledging his drug trafficking activities, the majority avoids the defendant's claim that, in so doing, the trial court impermissibly burdened or chilled his constitutional right to testify in his own defense by using that testimony against him at the time of sentencing. I write separately to express my view that the defendant's constitutional claim lacks merit.[1]

When the defendant elected to testify, he opened himself up to certain questions about his drug dealing activities, and the jury therefore was entitled to consider the defendant's answers to those questions in its deliberations. "A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics." *Jenkins* v. *Anderson*, 447 U.S. 231, 238, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980). Consequently, there is no constitutional infirmity in "requir[ing] [a] defendant to weigh such pros and cons in deciding whether to testify." *McGautha* v. *California*, 402 U.S. 183, 215, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971). I see no reason why it is permissible for the jury to consider such testimony for purposes of ascertaining whether the defendant is guilty or not

---

[1] I address this issue primarily because the majority's decision to avoid the defendant's constitutional claim possibly could be construed as suggesting that the claim might have merit, and I believe that it is important to dispel any such suggestion, especially for future cases.

guilty but not permissible for the court to consider that same testimony for purposes of sentencing. In other words, to the extent that the trial court relied on certain of the defendant's trial testimony in determining the appropriate sentence, the court's reliance on that testimony was no more a burden on the defendant's right to testify than was the jury's consideration of that same testimony in determining the defendant's guilt.

It is well established that "the [c]onstitution does not forbid every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." (Internal quotation marks omitted.) *Jenkins* v. *Anderson*, supra, 447 U.S. 236. Thus, it is settled that a defendant who elects to testify may be subject to enhanced punishment if the trial court believes that he lied on the witness stand; see *United States* v. *Grayson*, 438 U.S. 41, 52–55, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978); and there is no basis for concluding that a sentencing court cannot also consider a defendant's truthful but adverse trial testimony. See id., 50 ("a sentencing authority may legitimately consider the evidence heard during trial, as well as the demeanor of the accused"). Indeed, a defendant who takes the stand and admits to illegal conduct is not immunized from prosecution for that conduct. Similarly, if, while testifying on his own behalf, a defendant admits to unlawful or improper conduct, he bears the risk that the trial court will consider that testimony, among many other factors, in determining the correct sentence. See *Portuondo* v. *Agard*, 529 U.S. 61, 69, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000) ("[w]hen [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well" [internal quotation marks omitted]). To conclude otherwise would be inconsistent with the fact that "the evolutionary history of sentencing . . . dem-

onstrates that it is proper—indeed, even necessary for the rational exercise of discretion—to consider the defendant's whole person and personality, as manifested by his conduct at trial and his testimony under oath, for whatever light those may shed on the sentencing decision." *United States* v. *Grayson,* supra, 53. It is not surprising, therefore, that the defendant has not cited a single case in which a court has concluded that a defendant's right to testify was violated because the sentencing judge considered the defendant's own damaging testimony for sentencing purposes. Consequently, there is no merit to the defendant's contention that his right to testify was impermissibly burdened on the basis of the trial court's consideration of his testimony in deciding on the appropriate sentence.