******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KYLE DAMATO-KUSHEL
## (SC 19872)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa,
Robinson and Vertefeuille, Js.*

*Syllabus*

The plaintiff in error, P, sought a writ of error, claiming that the trial court improperly precluded him from attending pretrial disposition conferences in a criminal case in which he was the alleged victim. In the underlying criminal case, D was charged with various offenses arising out of her alleged sexual misconduct involving P. P claimed that the trial court's ruling barring his attendance at the pretrial disposition conferences violated his right as a victim "to attend the trial and all other court proceedings the accused has the right to attend," as set forth in the victim's rights amendment (Conn. Const., amend. XXIX [b] [5]). The defendants in error, D and the Superior Court in the judicial district of Fairfield, maintained that the trial court correctly determined that such conferences, when conducted in chambers and off the record, do not constitute court proceedings that the accused has the right to attend within the meaning of amendment XXIX (b) (5). They also claimed that this court lacked jurisdiction over P's writ of error because P was not aggrieved by the trial court's ruling and that that ruling was not an appealable final judgment. *Held*:

1. This court had jurisdiction over the writ of error: P was aggrieved by the trial court's ruling, as the issuance of the warrant for D's arrest, which required a finding of probable cause and was based on allegations that D's criminal misconduct was perpetrated against P specifically, constituted a sufficient determination of P's status as a victim to trigger the rights afforded by amendment XXIX (b), and there was no inconsistency between that conclusion and this court's unwillingness to condone the use of the term "victim" during certain trial proceedings before a jury prior to conviction; moreover, the trial court's ruling was a final judgment for purposes of P's writ of error, as P advanced a colorable claim that the constitutional right to attend court proceedings encompassed the right to attend in-chambers, pretrial disposition conferences, which would be irretrievably lost if appellate review of the trial court's ruling was delayed until judgment was rendered in the underlying criminal case; furthermore, there was nothing in the state constitution that precludes victims from seeking relief for a violation of the victim's rights amendment by way of a writ of error.

2. The trial court's ruling barring P from attending the pretrial disposition conferences was not improper, this court having concluded that in-chambers, off-the-record disposition conferences between the prosecuting attorney, defense counsel, and the presiding judge are not court proceedings that the accused has the right to attend within the meaning of amendment XXIX (b) (5), and, therefore, neither P nor his attorney had a right to attend them: the text of amendment XXIX (b) makes clear that a victim's right to attend such conferences is wholly contingent on the defendant's right of attendance, this court has determined previously that a defendant possesses no such right under the rules of practice, that determination was fully consistent with the language of the rule of practice (§ 39-13) requiring the defendant to appear at the time set for a disposition conference unless excused by the judicial authority, that language having indicated only that the defendant shall be present in the courtroom and not necessarily be involved in or present at in-chambers plea negotiations, and not having purported to create a right of attendance in the defendant, and P made no claim that he had a statutory or constitutional right independent of the victim's rights amendment to attend such a conference; moreover, this court declined to interpret the provision of the victim's rights amendment allowing the victim to be present at proceedings that the accused has the right to attend also to permit the victim to attend proceedings that counsel for the defendant, and not the defendant himself, has the right to attend,

excluding victims from off-the-record, in-chambers disposition conferences was not contrary to the goals of the victim's rights amendment, and considerations of public policy concerning plea bargains supported the determination that a victim's right of attendance under the victim's rights amendment does not extend to off-the-record, in-chambers disposition conferences, as the likelihood of defense counsel being willing to engage candidly with the state's attorney and the presiding judge during plea discussions would be greatly diminished by the presence of the victim or the victim's representative at such conferences, and, in such circumstances, the judicial role in plea negotiations would be sharply reduced in contravention of established public policy.

(*One justice concurring separately*)

Argued May 2—officially released December 5, 2017

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of Fairfield, *Devlin, J.*, to sustain the state's objection to the request of the plaintiff in error for permission to attend pretrial disposition conferences in the underlying criminal case in which he was the alleged victim. *Writ of error dismissed.*

*James G. Clark*, for the plaintiff in error.

*Richard Emanuel*, for the defendant in error (Superior Court, judicial district of Fairfield).

*Richard T. Meehan, Jr.*, for the defendant in error (Kyle Damato-Kushel).

*Todd D. Fernow*, *Timothy H. Everett*, *James O. Ruane* and *Denis J. O'Malley*, certified legal intern, filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. This case is before us on a writ of error. The plaintiff in error[1] claims that the trial court improperly precluded him, either personally or through his attorney, from attending plea negotiations and other discussions involving the court, the state's attorney and defense counsel during in-chambers, pretrial disposition conferences in the criminal prosecution of Kyle Damato-Kushel, which is now pending in the judicial district of Fairfield. In that criminal case, Damato-Kushel is charged with various offenses arising out of her alleged sexual misconduct involving the plaintiff in error commencing when Damato-Kushel was a teacher's aide in the school system of the town of Stratford and when the plaintiff in error was a fourteen year old student attending a school in that town. The plaintiff in error claims that the trial court's ruling barring his attendance at the pretrial disposition conferences violated his right as a victim "to attend the trial and all other court proceedings the accused has the right to attend" under article first, § 8, of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments (Conn. Const., amend. XXIX [b] [5]).[2] The defendants in error, Damato-Kushel and the Superior Court, judicial district of Fairfield, maintain that the trial court correctly determined that such conferences, when they are conducted in chambers and off the record,[3] do not constitute "court proceedings the accused has the right to attend" within the meaning of amendment XXIX (b) (5) and, therefore, that the court properly precluded the plaintiff in error from attending them. We agree with the defendants in error and, accordingly, dismiss the writ of error.

The following facts and procedural history are undisputed. On the basis of allegations lodged by the plaintiff in error, Damato-Kushel was arrested and charged with sexual assault in the second degree, risk of injury to a child, sexual assault in the fourth degree, and tampering with a witness. Shortly thereafter, Attorney James Clark of the Victim Rights Center of Connecticut, Inc., filed an appearance in the criminal case on behalf of the plaintiff in error.

At Damato-Kushel's arraignment, her counsel noted that Clark had filed an appearance in the case and advised the court that he objected to Clark's presence at any pretrial disposition conferences held in chambers. The court sustained the objection, explaining that amendment XXIX (b) (5) allows a victim to attend only those court proceedings that the defendant has a right to attend, and concluding that, because a defendant has no right to attend in-chambers, "judicial [pretrial]" conferences—generally, only his or her attorney attends such conferences—a victim also has no right to attend those conferences.

Thereafter, the plaintiff in error filed a motion for reconsideration, claiming that, contrary to the determination of the trial court, a victim does have a right to attend pretrial disposition conferences because, under Practice Book § 39-13,[4] the defendant is required to appear at such conferences. In the alternative, he maintained that, because counsel for a defendant attends a disposition conference solely as a representative of the defendant, the presence of such counsel at the conference is legally indistinguishable from the presence of the defendant, and, therefore, the fact that only counsel attends the conference is not a basis for denying the plaintiff in error the right to do so. Finally, the plaintiff in error argued that his exclusion from pretrial disposition conferences violated his right under amendment XXIX (b) (1) "to be treated with fairness and respect throughout the criminal justice process" because it would prevent him from responding to inaccurate statements made during those conferences. In response, Damato-Kushel argued that, contrary to the contentions of the plaintiff in error, a defendant has no right to attend in-chambers discussions between the presiding judge and the parties' attorneys and that permitting victims' attorneys to be present during such discussions would have an adverse chilling effect on pretrial plea negotiations.

The trial court subsequently granted the plaintiff in error's motion for reconsideration but denied the relief requested therein. In so ruling, the court acknowledged that a victim's right to attend court proceedings is "in parity with that of the defendant" but observed that Practice Book § 44-7 lists only five instances in which a defendant has the right to be present, none of which involves in-chambers, pretrial conferences.[5] In light of the nature of the proceedings enumerated in § 44-7, the court concluded that the term "court proceedings" under amendment XXIX (b) (5) was most reasonably interpreted to mean "proceedings on the record in open court." Although recognizing both that Practice Book § 39-13 requires that a defendant "appear at the time set for the disposition conference" and that the judge participating in that conference often takes an active role in the plea negotiations, the trial court disagreed that that provision also granted the defendant the right to be present at an off-the-record, in-chambers conference. The court also agreed with Damato-Kushel that the presence of the victim or his representative would undermine the ability of the parties to discuss the case openly and frankly, and observed that, because the victim's rights amendment obligates the state to keep the victim informed about the progress of the case and any potential disposition that may be the product of plea negotiations, excluding the victim from in-chambers conferences would not impair the victim's ability to express his views on any potential plea agreement resulting from those discussions.

Thereafter, the plaintiff in error brought this writ of error against the defendants in error, claiming that the trial court's ruling barring him from all future, in-chambers, pretrial disposition conferences violated his rights under amendment XXIX (b) (5). Damato-Kushel subsequently filed a motion to dismiss the writ as untimely and improperly filed, which this court denied. We then transferred the writ of error to the Appellate Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1, and that court ordered the parties to address, in addition to their other claims, "whether the trial court's interlocutory order precluding the victim from attending pretrial, in-chambers conferences concerning plea negotiations is a final judgment." We subsequently transferred the writ back to this court, also pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In this court, the plaintiff in error renews his contention in the trial court that in-chambers, pretrial disposition conferences are court proceedings that the accused—and thus the victim—have a right to attend under amendment XXIX (b) (5). Before turning to the merits of that claim, however, we first must address the claims of the defendants in error that this court lacks subject matter jurisdiction over the writ of error because (1) the plaintiff in error was not aggrieved by the trial court's ruling and, therefore, does not have standing to bring a writ of error, and (2) the trial court's interlocutory ruling was not an appealable final judgment under the test established in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), for determining whether a ruling constitutes such a judgment. See, e.g., *State* v. *Skipwith*, 326 Conn. 512, 518–25, 165 A.3d 1211 (2017) (this court addresses matters concerning its appellate jurisdiction, such as aggrievement, prior to considering merits of writ of error); see also id., 525 n.17 (leaving for another day question of whether victim can file interlocutory writ of error in cases in which there is alleged violation of victim's rights amendment). We address each of these contentions in turn.

I

Our rules of practice provide in relevant part that "[w]rits of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court following . . . a decision binding on an aggrieved nonparty . . . ." Practice Book § 72-1 (a) (1). The defendants in error assert that the plaintiff in error is not aggrieved by the trial court's ruling preventing his attendance at pretrial disposition conferences because the trial court never determined, "even preliminarily," that the plaintiff in error was, in fact, a " 'victim' " for purposes of the victim's rights amendment,[6] and, therefore, the plaintiff in error never had any constitutional rights that might be " 'injuriously affected' " by the actions of the trial court. *In re Jona-*

*than S.*, 260 Conn. 494, 503, 798 A.2d 963 (2002); see, e.g., id. ("the party claiming aggrievement must successfully demonstrate . . . that its asserted interest has been specially and injuriously affected in a way that is cognizable by law" [internal quotation marks omitted]). We disagree with this contention.

As the plaintiff in error observes, the issuance of an arrest warrant requires a finding of probable cause that a crime was committed by a particular defendant. See Practice Book § 36-1 (arrest warrant may be issued "if the judicial authority determines that the affidavit accompanying the application shows that there is probable cause to believe that an offense has been committed and that the accused committed it"). It is undisputed, moreover, that, in the present case, the arrest warrant application clearly alleged that Damato-Kushel's criminal misconduct was perpetrated against the plaintiff in error specifically. In such circumstances, we agree with the plaintiff in error that the arrest warrant constitutes a sufficient determination of his status as a victim to trigger the rights afforded by amendment XXIX (b) of the Connecticut constitution. See, e.g., *State* v. *Stauffer*, 203 Ariz. 551, 553, 58 P.3d 33 (App. 2002) (victims' rights arise "on the arrest or formal charging of the person or persons who are alleged to be responsible for a criminal offense against a victim" [internal quotation marks omitted]). Furthermore, contrary to the assertions of the defendants in error, we see no inconsistency between this conclusion and our unwillingness to condone the use of the term "victim" during certain trial proceedings before a jury prior to conviction; see, e.g., *State* v. *Cortes*, 276 Conn. 241, 249 n.4, 885 A.2d 153 (2005) (referring to complainant in jury charge as " 'victim' " was "inappropriate [when] the very commission of a crime [was] at issue"); because, in those circumstances, the jury must decide whether the complainant was, in fact, the victim of a crime perpetrated by the defendant. Nor have the defendants in error provided any authority requiring a more robust adjudicatory process for identifying victims under the victim's rights amendment than that required for the issuance of an arrest warrant.

The defendants in error next maintain that the ruling of the trial court was not a final judgment from which a writ of error may be brought. We also disagree with this claim. This court previously has held that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31. Under *Curcio*'s second prong, the prong asserted by the plaintiff in error in the present case, "[a] presentence order will be deemed final for purposes of appeal only if it involves a claimed right the legal and practical value of which would be

destroyed if it were not vindicated before trial." (Internal quotation marks omitted.) Id., 33–34. Because the trial court in the present case excluded the plaintiff in error from all future, in-chambers, pretrial disposition conferences, it is clear that the alleged right to attend such conferences would be irretrievably lost if the plaintiff in error could not challenge the trial court's decision on an interlocutory basis.

The defendants in error argue, nonetheless, that, under *State* v. *Longo*, 192 Conn. 85, 469 A.2d 1220 (1984), the denial of an alleged constitutional right to attend pretrial disposition conferences cannot constitute a final judgment or form the basis for an interlocutory appeal because the right itself is not clearly established. This argument misconstrues *Longo*. In that case, we explained that a defendant "must do more than show that the trial court's decision threatens him with irreparable harm. The defendant must show that that decision threatens to abrogate a right that he or she *then* holds." (Emphasis in original.) Id., 91. On that basis, we concluded that the designation of youthful offender status, which lies purely within the discretion of the trial court, is on different footing than a right granted by the constitution, such as the "unqualified right to be free from double jeopardy"; id.; and we further explained that an order that "plausibly" threatens to abrogate the latter is an appealable final judgment, whereas an order denying youthful offender status is not. Id., 91–92.

Thus, *Longo* actually belies the claim of the defendants in error that the trial court's ruling in the present case is not a final judgment: the right to attend court proceedings as a victim, like the protection against double jeopardy, is a right granted by the state constitution, not a right that emerges only after the discretionary determination of the trial court. See *State* v. *Skipwith*, supra, 326 Conn. 520 n.10 (specific rights granted by amendment XXIX [b] are immediately effective). Furthermore, although we have held that "merely invoking" constitutional protections, "no matter how implausible or incongruous the claim might be," will not provide the basis for an interlocutory appeal; *State* v. *Curcio*, supra, 191 Conn. 37; the plaintiff in error has advanced a colorable claim that the constitutional right to attend court proceedings encompasses the right to attend in-chambers, pretrial disposition conferences. Because that right will be destroyed if appellate review is delayed until judgment is rendered in the underlying criminal case; see id., 34; the trial court's ruling is a final judgment for purposes of the writ of error in this case.

Finally, the defendants in error argue that the victim's rights amendment itself bars the plaintiff in error from seeking any kind of appellate relief. See Conn. Const., amend. XXIX (b) ("[n]othing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction

or ground for appellate relief in any criminal case"). Following oral argument in the present case, however, this court rejected just such an argument in *State* v. *Skipwith*, supra, 326 Conn. 524–25, in which we held that nothing in the state constitution precludes victims from seeking relief for a violation of the victim's rights amendment by way of a writ of error. We explained that the language in the amendment barring appellate relief "merely prohibits this court from granting any relief that would directly affect the judgment in a criminal case or otherwise abridge the substantive rights of a defendant." Id. The relief that the plaintiff in error seeks in the present case would do neither. Although the defendants in error maintain that the presence of the plaintiff in error or his counsel at in-chambers, pretrial disposition conferences would adversely affect the plea discussions that occur in that setting, any such negative impact would occur before judgment has been rendered, and, thus, the judgment itself would not be adversely affected. Moreover, it cannot reasonably be maintained that the presence of the plaintiff in error or his representative at an in-chambers, pretrial disposition conference would so deter or discourage the state's attorney and Damato-Kushel from engaging in plea negotiations as to abridge any of Damato-Kushel's substantive rights. Accordingly, we have jurisdiction to entertain the claims raised by the writ of error in the present case.[7]

## II

We turn now to the merits of those claims. The plaintiff in error contends that the trial court improperly excluded his attorney from in-chambers, pretrial disposition conferences at which the presiding judge, the state's attorney and Damato-Kushel's counsel engaged in plea negotiations, in violation of his "right to attend the trial and all other court proceedings the accused has the right to attend," as guaranteed by amendment XXIX (b) (5).[8] The defendants in error maintain that the trial court properly concluded that a victim's right to attend does not include off-the-record, in-chambers disposition conferences both because such conferences are not "court proceedings" and because the defendant has no right to attend them.

Amendment XXIX (b) of the Connecticut constitution provides in relevant part that, "[i]n all criminal prosecutions, a victim . . . shall have . . . (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony . . . ." With respect to the contention of the defendants in error that the plaintiff in error has no right to attend the pretrial conferences at issue because they are not "court proceedings," as that term is used in amendment XXIX (b) (5), the term

appears twice in the victim's rights amendment; see Conn. Const., amend. XXIX (b) (5); see also Conn. Const., amend. XXIX (b) (4) ("the right to notification of court proceedings"); but the term is not defined in the state constitution, in our statutes, or in any case of this court or the Appellate Court. At the time of the amendment, however, Black's Law Dictionary defined "proceeding" as, inter alia, "[a]n act [that] is done by the authority or direction of the court, agency, or tribunal, express or implied" and noted that it "may be used to describe any act done by authority of a court of law . . . ." Black's Law Dictionary (6th Ed. 1990) p. 1204.[9] The modifier "court" therefore might reasonably distinguish proceedings undertaken pursuant to the authority of a court of law, such as disposition conferences,[10] from those undertaken by an agency or other tribunal. On the other hand, "court proceedings" also may reasonably be construed to limit the "act[s] done by authority of a court of law"; id.; to those taking place within the physical bounds of a courtroom, as opposed to those acts, like the execution of a bench warrant, undertaken elsewhere. See Webster's Ninth New Collegiate Dictionary (1987) p. 299 ("court" may be "a place . . . for the administration of justice").[11]

Because we cannot discern the meaning of the provision solely on the basis of the text of the amendment, we look to extratextual sources to guide our interpretation. Such evidence, however, does not definitively resolve the interpretative question posed by the claim of the plaintiff in error. On the one hand, we recognize that more than 90 percent of criminal cases in this state are resolved through plea bargains in any given year; see, e.g., Judicial Branch, State of Connecticut, Movement of Criminal Docket: Judicial District Criminal, July 1, 2015, to June 30, 2016, available at https://www.jud.ct. gov/statistics/criminal/Crim_JD_1016.pdf (last visited November 22, 2017); and that our rules of practice both require and provide structure with respect to disposition conferences. See Practice Book §§ 39-11 through 39-17. Accordingly, we hesitate to characterize such mandated conferences, which are conducted under the active supervision of the court itself, as anything other than "court proceedings." On the other hand, the conferences at issue in the present case are conducted informally and off the record, and, for that reason, we are hesitant to deem them court proceedings in the absence of reasonably clear evidence that we should do so.[12] We need not resolve this question, however, in light of our agreement with the alternative argument advanced by the defendants in error, namely, that the victim has no right to attend off-the-record, in-chambers disposition conferences because the defendant herself has no right to do so.

The text of amendment XXIX (b) makes clear that a victim's right to attend such conferences is wholly contingent on the defendant's right of attendance. See

Conn. Const., amend. XXIX (b) (5). This court has previously determined, however, in *State* v. *Lopez,* 197 Conn. 337, 497 A.2d 390 (1985), that a defendant possesses no such right under our rules of practice. In that case, the defendant, Jose Lopez, claimed that the trial court improperly had excluded him from "a secret pretrial conference between the court, the [s]tate's [a]ttorney, and [defense counsel]," in which plea negotiations were conducted. (Internal quotation marks omitted.) Id., 348. We rejected Lopez' claim, explaining that, "[a]lthough there may have been a disposition conference from which [Lopez] was excluded, under our established rules of practice neither [Lopez] nor the public is entitled to attend such a proceeding. In fact, under Practice Book §§ [39-1 and 39-2], the [state] is not permitted to engage in plea negotiations directly with a defendant who is represented by counsel, except with defense counsel's permission. [See Practice Book §§ 39-1[13] and 39-2];[14] [s]ee also Practice Book § [39-14].[15] Furthermore, Practice Book § [44-7][16] does not include the disposition conference or plea negotiations among the specifically enumerated situations [in which] a criminal defendant has the right to be present." (Footnotes added and omitted.) *State* v. *Lopez*, supra, 349–50. Thus, *Lopez*—and, indeed, Practice Book § 44-7 itself—leaves no doubt that a defendant has no right to attend a disposition conference under our rules of practice. Moreover, the plaintiff in error makes no claim that he has a statutory or constitutional right independent of the victim's rights amendment to attend such a conference.

Contrary to the assertions of the plaintiff in error, our conclusion in *Lopez* that a defendant has no right to attend disposition conferences is fully consistent with the language of Practice Book § 39-13,[17] which requires that the defendant "appear at the time set for the disposition conference unless excused by the judicial authority"—a requirement that is itself expressly subject to the discretion of the court—and does not purport to create a *right* of attendance in the defendant supplementary to the rights of attendance enumerated in Practice Book § 44-7. Indeed, under our rules of practice, a disposition conference is intended to be a discussion between "[t]he prosecuting authority and counsel for the defendant"; Practice Book § 39-14; such that the requirement that a defendant "appear *at the time set for* the disposition conference"; (emphasis added) Practice Book § 39-13; indicates only that the defendant shall be present in the courtroom, not that she must be involved in or present at in-chambers plea negotiations. Requiring the defendant's appearance in court during the disposition conference serves the purpose of making the defendant available for consultation with counsel and, in the event that an agreement is reached, to enter the plea in open court in accordance with that agreement.[18] See Practice Book § 39-24;[19] see also Mass. R. Crim. P.

11 (a) and reporter's notes (defendant "shall be available for attendance" at pretrial conference so that his "assent to . . . agreements may readily be obtained").

The plaintiff in error further claims that the attendance of *counsel* for the defendant during plea negotiations at a disposition conference is no different from attendance by the defendant personally for purposes of the victim's right of attendance under amendment XXIX (b). Again, we disagree.

Although it is well established that counsel often functions as an agent of the defendant; see, e.g., *Monroe* v. *Monroe*, 177 Conn. 173, 181, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); it is equally well established that the privileges, rights, and responsibilities of counsel are not identical to those of the defendant. See, e.g., *State* v. *Gore*, 288 Conn. 770, 779 n.10, 955 A.2d 1 (2008) (distinguishing fundamental rights that defendant must personally decide to waive from "tactical rights" that are waivable by counsel). In the present context, it is defense counsel's responsibility to engage in plea negotiations on behalf of the defendant, albeit in consultation with the defendant as counsel reasonably deems necessary and appropriate. Only the defendant, however, can actually enter a plea of guilty, and any such plea proceedings must be conducted on the record. See, e.g., *Florida* v. *Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) ("counsel lacks authority to consent to a guilty plea on a client's behalf"); see also Practice Book § 39-24. In light of this division of authority within the plea process itself, we decline to interpret the provision of the victim's rights amendment allowing the victim to be present at proceedings that "the accused has the right to attend"; Conn. Const., amend. XXIX (b) (5); *also* to permit the victim to attend proceedings that *counsel* for the defendant, and not the defendant herself, has the right to attend. See *Morehart* v. *Barton*, 226 Ariz. 510, 515, 250 P.3d 1139 (2011) (victims' argument that "their right to attend proceedings '[at which] the defendant has a right to be present' should include proceedings [at which] either the defendant or defense counsel is entitled to appear . . . is refuted by the language of the [v]ictims' [b]ill of [r]ights . . . which refer[s] to the 'defendant' rather than the 'defense' or 'defense counsel' ").

We also disagree with the plaintiff in error that excluding victims from off-the-record, in-chambers disposition conferences is contrary to the goals of the victim's rights amendment. An important purpose of amendment XXIX (b) (5) and other state constitutional provisions like it was to address the concern that victims were being unreasonably excluded from the courtroom at trial and other on-the-record proceedings. See, e.g., *State* v. *Ticknor*, Docket No. 1 CA-CR 11-0359, 2012 WL 1067236, *3 n.4 (Ariz. App. March 29, 2012)

(explaining that rule exempting victims from sequestration "gives effect" to attendance provision of victim's rights amendment to Arizona constitution); *State* v. *Beltran-Felix*, 922 P.2d 30, 33–35, 38 (Utah App. 1996) (presence of victim at trial, as permitted by victim's rights amendment to Utah constitution, did not violate defendant's federal constitutional right to fair trial); National Victim Center, The 1996 Victims' Rights Sourcebook: A Compilation and Comparison of Victims' Rights Laws (1996) § 10, pp. 285–86 (identifying exclusion from trial as primary problem addressed by victim attendance provisions and noting "widespread misuse of the sequestration rule by defense attorneys" to remove from courtroom "anyone who may draw the sympathy of the jury"); Final Report of the President's Task Force on Victims of Crime (December, 1982) p. 80 (noting that "[t]ime and again . . . victims . . . were unreasonably excluded from the trial at which responsibility for their victimization was assigned," and recommending that, "as an exception to the general rule providing for the exclusion of witnesses, [victims and their families] be permitted to be present for the entire trial"); see also *State* v. *Swinton*, 268 Conn. 781, 849, 847 A.2d 921 (2004) (state objected to defendant's request to sequester " '[a]ny and all potential witnesses' " on ground that defendant's request violated victims' right to be present under amendment XXIX); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 13, 2005 Sess., pp. 3795, 3798, testimony of James F. Papillo (noting that victims were often precluded from attending youthful offender proceedings and explaining that proposed legislation implementing provisions of victim's right amendment, which presumptively allowed victims to attend such proceedings, would ensure that victims of crimes committed by youthful offenders were accorded all rights granted by that amendment); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1988 Sess., p. 971, remarks of Representative Peter A. Nystrom (noting, in remarks on proposed legislation allowing representatives of homicide victims to attend proceedings involving prosecution of defendant, that victims and their representatives often were not "allowed to be in the court during the time of process of trial"). Consistent with this concern, amendment XXIX (b) (5) includes a provision carefully limiting the court's ability to sequester victims—in spite of otherwise mandatory sequestration rules and procedures[20]—by requiring that the court make a finding as to whether the victim's testimony would be "materially affected" by hearing other testimony.

By contrast, a victim's right to participate meaningfully in the plea bargaining process is safeguarded by other provisions of the victim's rights amendment—in particular, "the right to communicate with the prosecution" under amendment XXIX (b) (6), "the right . . .

to make a statement to the court" regarding any plea agreement prior to its acceptance under amendment XXIX (b) (7), and the broader, more encompassing right under amendment XXIX (b) "to be treated with fairness and respect throughout the criminal justice process . . . ." Conn. Const., amend. XXIX (b) (1); see, e.g., *State* v. *Thomas*, 296 Conn. 375, 390 n.11, 995 A.2d 65 (2010) (legislature sought to give victims " 'true role' " in plea bargaining process by giving victim right to be heard prior to acceptance of plea); S. Welling, "Victim Participation in Plea Bargains," 65 Wash. U. L.Q. 301, 355 (1987) (arguing that victim's right to participate in plea bargains "is best defined as a right to be heard by the trial judge before the plea bargain is accepted"). To the extent that the plaintiff in error suggests that state's attorneys cannot be relied on to adequately communicate the information necessary for a victim to comment on the appropriateness of any plea bargain, we reject that assertion. We have every reason to believe that state's attorneys will fully discharge their constitutional, statutory, and professional responsibilities to victims; see Conn. Const., amend. XXIX (b);[21] General Statutes § 54-91c; see also A.B.A., Criminal Justice Standards for the Prosecution Function (4th Ed. 2015) standard 3-3.4 (i);[22] and that, in the unlikely case of a wilful failure to do so, such misconduct will not be taken lightly. See, e.g., *Attorney Grievance Commission* v. *Smith*, 442 Md. 14, 31–32, 109 A.3d 1184 (2015) (prosecutor sanctioned for violating Maryland Lawyer's Rules of Professional Conduct by repeatedly and wilfully failing to communicate with victim).

We note, finally, that considerations of public policy—as primarily reflected in court rules and practices, all of which are consistent with constitutional requirements—support our determination that a victim's right of attendance under amendment XXIX (b) (5) does not extend to off-the-record, in-chambers disposition conferences. For better or for worse, plea bargaining involving the court, the state and the defendant has become an important tool for the efficient and orderly disposition of our criminal court dockets. See, e.g., *State* v. *Elson*, 311 Conn. 726, 776, 91 A.3d 862 (2014) (documenting "our state's extremely heavy reliance on plea bargaining in resolving criminal cases"); *State* v. *Revelo*, 256 Conn. 494, 505, 775 A.2d 260 ("[w]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of [the] criminal justice system" [internal quotation marks omitted]), cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001). Moreover, although many jurisdictions forbid or strictly limit judicial participation in plea conferences, practice and policy in Connecticut recognize that judges may play a valuable role in facilitating plea negotiations.[23] See *State* v. *Revelo*, supra, 508 n.25 ("[i]t is a common practice in this state for the presiding criminal judge to

conduct plea negotiations with the parties"); J. Turner, "Judicial Participation in Plea Negotiations: A Comparative View," 54 Am. J. Comp. L. 199, 201, 214 (2006) (explaining that, unlike judges in many states, Connecticut judges "are actively involved in the negotiations as moderators and comment not only on the ultimate sentence acceptable to the court, but also on the merits of the case," and arguing that such "[a]ctive judicial participation" in plea negotiations may be "a better way to promote accuracy and fairness in plea bargaining"). We agree with the defendants in error that the likelihood of defense counsel being willing to engage candidly with the state's attorney and the presiding judge during plea discussions would be greatly diminished by the presence of the victim or the victim's representative at such conferences. In such circumstances, the judicial role in plea negotiations will be sharply reduced in contravention of our established public policy.

We therefore conclude that in-chambers, off-the-record disposition conferences between the prosecuting attorney, defense counsel, and the presiding judge are not "court proceedings the accused has the right to attend" under amendment XXIX (b) (5). Consequently, neither the victim nor his authorized representative has a right to attend them.[24]

The writ of error is dismissed.

In this opinion ROGERS, C. J., and EVELEIGH, McDONALD, ROBINSON and VERTEFEUILLE, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] In accordance with our policy of protecting the privacy interests of victims of sexual assault, we decline to identify the plaintiff in error. See General Statutes § 54-86e.

[2] Article first, § 8, of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "b. In all criminal prosecutions, a victim, as the general assembly may define by law, shall have the following rights: (1) The right to be treated with fairness and respect throughout the criminal justice process; (2) the right to timely disposition of the case following arrest of the accused, provided no right of the accused is abridged; (3) the right to be reasonably protected from the accused throughout the criminal justice process; (4) the right to notification of court proceedings; (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony; (6) the right to communicate with the prosecution; (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8) the right to make a statement to the court at sentencing; (9) the right to restitution which shall be enforceable in the same manner as any other cause of action or as otherwise provided by law; and (10) the right to information about the arrest, conviction, sentence, imprisonment and release of the accused. The general assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case."

Hereinafter, we refer to this provision as amendment XXIX (b) or the victim's rights amendment.

[3] These in-chambers, pretrial disposition conferences are almost invariably conducted off the record, that is, they are not recorded, and, therefore, no

transcript of the conference is available. Our consideration of the issue presented by this appeal is limited to such off-the-record, in-chambers disposition conferences.

[4] Practice Book § 39-13 provides: "The prosecuting authority, the defense counsel, and, in cases claimed for jury trial, the defendant shall appear at the time set for the disposition conference unless excused by the judicial authority. Requests for postponements shall be made only to the presiding judge and shall be granted upon good cause shown."

[5] Practice Book § 44-7 provides in relevant part: "The defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, at the trial, and at the sentencing hearing, except as provided in Sections 44-7 through 44-10. . . ."

[6] General Statutes § 1-1k defines "victim of crime" as "an individual who suffers direct or threatened physical, emotional or financial harm as a result of a crime and includes immediate family members of a minor, incompetent individual or homicide victim and a person designated by a homicide victim . . . ."

[7] The defendants in error also argue that the case will become moot if the underlying criminal case is resolved before this court issues an opinion in the present appeal. Suffice it to say that the underlying criminal case remains pending, and we cannot say that there will be no further pretrial disposition conferences in the case. Consequently, the claim of the plaintiff in error is not moot.

We also note that the plaintiff in error contends that the defendant in error, Superior Court, judicial district of Fairfield, lacks standing to participate in this appeal, even though the plaintiff in error brought this writ of error against both Damato-Kushel *and* the Superior Court, judicial district of Fairfield, and that we therefore must strike that party's briefs. In support of this claim, the plaintiff in error contends that the Superior Court, judicial district of Fairfield, has no cognizable interest in the outcome of this appeal, and, consequently, it has no right to be heard. On the contrary, the Superior Court, judicial district of Fairfield, as well as its trial judges, who preside over and take an active role in those conferences, have a legitimate interest in the efficacy of the conferences—and, therefore, the manner in which they are conducted—and that interest, it is claimed, will be adversely affected if the plaintiff in error prevails in this appeal. Such a stake in the outcome of this appeal is more than sufficient to satisfy the requirements of standing. See, e.g., *Broadnax* v. *New Haven*, 270 Conn. 133, 153–55, 851 A.2d 1113 (2004).

[8] At oral argument before this court, counsel for the plaintiff in error made clear that the plaintiff in error claims only that he or his counsel has the right to *attend* any off-the-record, in-chambers disposition conferences that may be conducted in the underlying criminal case; other than the right to be present to observe what occurs at those conferences, however, the plaintiff in error does *not* claim that he has the right to actually *participate* in them.

[9] Although this court has not defined the term "proceedings" for purposes of amendment XXIX (b), in other contexts, we have defined the term broadly "to include all methods involving the action of courts"; (internal quotation marks omitted) *State* v. *Ventola*, 122 Conn. 635, 639, 191 A. 726 (1937); see id., 638–39 (proceeding to disbar attorney is " 'civil proceeding' " for purposes of witness bribery statute). Those precedents, however, shed little light on the meaning of the term as it is used in the context of the victim's rights amendment.

[10] Disposition conferences are ordered by the court and scheduled under its auspices. See Practice Book § 39-11 ("[a]fter conferring with the clerk, the presiding judge shall assign for disposition conferences so much of the jury trial list as he or she shall deem necessary for the proper conduct of the court").

[11] We reject the argument of the plaintiff in error that, because the victim's rights amendment does not limit the victim attendance provision to *public* court proceedings, as a number of other state constitutions do; see, e.g., N.M. Const., art. II, § 24 (A) (5) ("the right to attend all public court proceedings the accused has the right to attend"); victims in Connecticut have the right to attend off-the-record, in-chambers disposition conferences. The omission of such language from our victim's rights amendment, even if intentional, may simply indicate that victims generally may attend, in addition to public hearings, on-the-record proceedings that are closed to the public.

[12] We note that such caution is consistent with the legislative history of Public Acts 2000, No. 00-200 (P.A. 00-200), "An Act Concerning Victim's

Rights," which was passed by the legislature pursuant to its authority under amendment XXIX (b) to enact laws implementing the provisions of the victim's rights amendment. See Conn. Const., amend. XXIX (b) ("[t]he general assembly shall provide by law for the enforcement of this subsection"). In discussing that legislation, which provided that victims shall have the right to attend "all court proceedings that are part of the court record"; P.A. 00-200, § 7; see also House Bill No. 5785, 2000 Sess.; Representative Michael P. Lawlor, cochairman of the Judiciary Committee, expressly sought to clarify that, "for legislative intent . . . this does not mean that the victim or anyone else has a right to be in any [off-the-record, in-camera] discussions which are customarily part of the pretrial phase of any court case . . . ." 43 H.R. Proc., Pt. 13, 2000 Sess., p. 4320. Of course, because this legislative history addresses the language of the implementing legislation and not the language of the victim's rights amendment itself, it bears only limited relevance to the meaning of the amendment.

[13] Practice Book § 39-1 provides in relevant part: "The prosecuting authority and counsel for the defendant, or the defendant when not represented by counsel, may engage in discussions at any time with a view towards disposition. . . ."

[14] Practice Book § 39-2 provides in relevant part: The prosecuting authority shall not engage in plea discussions at the disposition conference, or at other times, directly with a defendant who is represented by counsel, except with such counsel's approval. . . ."

[15] Practice Book § 39-14 provides: "The prosecuting authority and counsel for the defendant should attempt to reach a plea agreement pursuant to the procedures of Sections 39-1 through 39-10."

[16] Practice Book § 44-7 provides in relevant part: "The defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, at the trial, and at the sentencing hearing . . . ."

[17] See footnote 4 of this opinion.

[18] Moreover, aside from Florida; see *Ault* v. *State*, 53 So. 3d 175, 201 (Fla. 2010) ("a criminal defendant has the right to be present at any pretrial conference, unless waived by defendant in writing" [internal quotation marks omitted]), cert. denied, 565 U.S. 871, 132 S. Ct. 224, 181 L. Ed. 2d 124 (2011); the plaintiff in error has identified no jurisdiction, and we have found none, in which a defendant has the right—by statute, court rule, or constitutional provision—to be personally present during plea negotiations.

[19] Practice Book § 39-24 provides: "A verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo contendere. This record shall include the judicial authority's advice to the defendant, the inquiry into the voluntariness of the plea, including any plea agreement, and the inquiry into the factual basis for the plea."

[20] See Practice Book § 42-36 ("[t]he judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which such witness is not testifying"); see also *State* v. *Robinson*, 230 Conn. 591, 598, 646 A.2d 118 (1994) ("the granting of a sequestration order in criminal cases is not discretionary and can be invoked by either party").

[21] See footnote 2 of this opinion.

[22] Standard 3-3.4 (i) of the Criminal Justice Standards for the Prosecution Function provides: "Consistent with any specific laws or rules governing victims, the prosecutor should provide victims of serious crimes, or their representatives, an opportunity to consult with and to provide information to the prosecutor, prior to making significant decisions such as whether or not to prosecute, to pursue a disposition by plea, or to dismiss charges. The prosecutor should seek to ensure that victims of serious crimes, or their representatives, are given timely notice of:

"(i) judicial proceedings relating to the victims' case;

"(ii) proposed dispositions of the case;

"(iii) sentencing proceedings; and

"(iv) any decision or action in the case that could result in the defendant's provisional or final release from custody, or change of sentence."

[23] Some states, along with the federal courts, explicitly prohibit any judicial participation in plea negotiations. See, e.g., Fed. R. Crim. P. 11 (c) (1) ("[t]he court must not participate in [plea] discussions"). Many other jurisdictions allow for varying degrees of limited participation by the trial judge, either during plea discussions or once a preliminary plea agreement has been crafted by the parties. See, e.g., Mass. R. Crim. P. 12 (b) (2) ("[t]he judge may participate in plea discussions at the request of one or both of the

parties if the discussions are recorded and made part of the record"); *People* v. *Cobbs*, 443 Mich. 276, 283, 505 N.W.2d 208 (1993) (at request of party, judge "may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense" [emphasis in original]). Other states, such as Connecticut, allow significant participation in plea negotiations by a judge other than the judge who will preside over the trial if no plea agreement is reached. See, e.g., Ariz. R. Crim. P. 17.4 (a) ("The trial judge shall only participate in settlement discussions with the consent of the parties. In all other cases, the discussions shall be before another judge or a settlement division."); Or. Rev. Stat. § 135.432 (1) (a) and (b) (2015) (trial judge generally may not participate in plea discussions, but "[a]ny other judge, at the request of both the prosecution and the defense, or at the direction of the presiding judge, may participate in plea discussions"). Finally, a few jurisdictions appear to permit full participation in plea negotiations by the same judge who will preside at trial. See, e.g., Haw. R. Penal Proc. 11 (f) (1) ("[t]he court may participate in discussions leading to such plea agreements and may agree to be bound thereby"); Ill. Sup. Ct. R. 402 (d) (1) ("[u]pon request by the defendant and with the agreement of the prosecutor, the trial judge may participate in plea discussions").

[24] Justice Espinosa takes issue with our use of the term "disposition conference" to describe the in-chambers, pretrial conferences at issue in this appeal. She maintains that, under our rules of practice, "disposition conference" has a singular meaning, namely, "an in-court, on-the-record, formal proceeding." According to Justice Espinosa, the disposition conference does not include in-chambers, pretrial conferences or other plea negotiation conferences but, rather, "is the formal culmination of all of [those] efforts . . . ." We disagree. Practice Book §§ 39-11 through 39-17, which govern and describe disposition conferences from their inception to their conclusion, make clear that such conferences include off-the-record negotiations between "[t]he prosecuting authority and counsel for the defendant," during which the parties are required to "attempt to reach a plea agreement . . . ." Practice Book § 39-14. "Should the parties be unable to reach an agreement as to disposition," Practice Book § 39-15 directs them to "report to the presiding judge or to another judge assigned by him or her." If the parties are able to reach an agreement, Practice Book § 39-16 directs them to "advise the judicial authority . . . ." Practice Book § 39-17, entitled "Effect of Disposition Conference," finally provides that, "[i]f a case is not resolved at the disposition conference or if the judicial authority rejects the plea agreement [reached at the conference], the case shall be assigned to a trial list." Accordingly, it is apparent from the plain language of the relevant rules of practice that the "disposition conferences" identified therein are not limited to in-court, on-the-record, formal proceedings.

Justice Espinosa also asserts that it is unnecessary for us to decide whether pretrial disposition conferences are court proceedings within the meaning of amendment XXIX (b) (5) because the victim's rights amendment, by its literal terms, limits the right of attendance to the victim himself, not his attorney, and, in view of the fact that the plaintiff in error seeks only to have his attorney attend those conferences, the victim's right amendment is not implicated. As the trial court record and the record on appeal make clear, however, the right of attendance that the plaintiff in error seeks to vindicate in this matter is his own, albeit by and through counsel, his duly authorized legal representative. We note, moreover, that, although we ultimately conclude that the plaintiff in error possesses no such right of attendance, it is axiomatic that, if he did, it would include the right to have his counsel attend, either together with the victim or in the victim's stead. Any other reading of the victim's right amendment would lead to the bizarre and untenable result that a victim who, by reason of youth, infirmity, disability or otherwise, is unable to attend or fully understand a disposition conference, would effectively be foreclosed from exercising that purported right of attendance under the victim's rights amendment. We thus do not share Justice Espinosa's unduly narrow interpretation of the amendment because her construction is antithetical to the very purpose of the amendment, which, as this court previously has observed, is to "provide crime victims with the opportunity to participate meaningfully in the sentencing and plea bargaining process." *State* v. *Thomas*, supra, 296 Conn. 389 n.11.